**REDACTED VERSION**

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BITMANAGEMENT SOFTWARE GMBH,<br><br>                      Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>                      Defendant. | Case No. 16-840 C<br><br>Senior Judge Edward J. Damich |

**PLAINTIFF'S SUR-REPLY IN RESPONSE TO DEFENDANT'S REPLY IN SUPPORT OF ITS OBJECTION TO EVIDENCE OFFERED IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

The Government's objection is an attempt to avert summary judgment by manufacturing a dispute of material fact where none exists. Pursuant to the Court's Order of July 24, 2018 (Dkt. 33), Plaintiff Bitmanagement Software GmbH ("Bitmanagement") hereby submits the following sur-reply in response to the Defendant's ("Government") reply in support of its evidentiary objections, dated May 11, 2018 (Dkt. 31).

**I.  The June 14, 2012 Software License Agreement Between Planet 9 Studios, Inc. and Bitmanagement Should Be Admitted as a Valid and Binding Agreement and as a Properly Authenticated Business Record**

The Government objects to consideration of the June 14, 2012 Software License Agreement ("2012 Reseller Agreement"), A.251-57, a written agreement between Planet 9 Studios, Inc. ("Planet 9") and Bitmanagement, because it is unsigned, but that concern is meritless. Planet 9 and Bitmanagement intended to be bound by the agreement and fully performed their obligations under the written agreement. The Government points to no evidence to the contrary. Moreover, because the 2012 Reseller Agreement is a business record that

1

documents the parties' agreement regarding the sale of 18 licenses of BS Contact Geo for resale to the Navy in 2012, it is not excludable under the hearsay rule.[1]

### A. The 2012 Reseller Agreement Is the Complete and Binding Agreement Between the Parties

In its reply, the Government argues that the 2012 Reseller Agreement may not be the complete and final agreement between Bitmanagement and Planet 9 because it is unsigned and there is no "evidence that the parties agreed to its terms." Dkt. 31 at 1. That the agreement is unsigned does not make it inadmissible. *See Yong Kui Chen v. Wai Yin Chan*, 615 F. App'x 10, 13 (2d Cir. 2015); *Tyco Thermal Controls, LLC v. Redwood Industrials, LLC*, No. C 06-7164 SBA, 2012 WL 2792435, at *3 (N.D. Cal. July 9, 2012). As the Government acknowledges, Dkt. 31 at 3, the Court can enforce (and grant summary judgment based in part on) an unsigned agreement if the evidence shows the parties intended it to be binding. *See Brown v. Dep't of Army*, 157 Fed. App'x 295, 298 (Fed. Cir. 2005). Courts routinely hold unsigned agreements—including written drafts—fully enforceable when the parties "perform[ed] in accordance with the basic terms of the draft contracts." *See, e.g.*, *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 450 (S.D.N.Y. 1999). Here, both the unrebutted evidence and the parties' conduct shows they intended to be bound by the 2012 Reseller Agreement.

*First*, there is no dispute that the parties performed according to the terms of the 2012 Reseller Agreement. *See* Dkt. 29 at 4-5. Although Bitmanagement and Planet 9 did not sign the 2012 Reseller Agreement, Planet 9 performed consistent with its terms (which provide for the sale of "BS Contact … for 18 PCs … to NAVFAC for [NAVFAC's] usage according to this

---

[1] The Government's evidentiary objection to the 2012 Reseller Agreement would apply with equal force to the numerous unsigned agreements on which the Government's *own expert* relied in his report.

agreement," A.256) by reselling 18 BS Contact Geo licenses to the Navy in 2012. Dkt. 27, DAF ¶ 24; Dkt. 25, SUMF ¶ 22. Planet 9 subsequently paid Bitmanagement $4,222.98—the amount of the "Total Fee" provided for in the 2012 Reseller Agreement, A.256—for those 18 licenses. A.2016.[2] Bitmanagement likewise performed its obligations under the contract by making the 18 licenses available to Planet 9 for resale. Bitmanagement and Planet 9's performance of all the key terms of the 2012 Seller Agreement demonstrates "the parties' understanding that a binding contract was in force." *Evolution Online Sys., Inc.*, 41 F. Supp. at 450.

*Second*, as Bitmanagement's CEO Peter Schickel testifies, the 2012 Reseller Agreement encompassed the terms agreed to with Planet 9 related to the license and resale of 18 BS Contact Geo licenses. Declaration of Peter Schickel ("Schickel Decl.") ¶ 7. The Government points to no contradictory evidence in the record. Tellingly, the Government—which deposed Mr. Schickel and could have probed then whether the agreement was final—does not even suggest that the parties' understanding of the terms of their agreement varied from the text of the 2012 Reseller Agreement. Instead, the Government speculates that the existence of an unsigned "later draft" of the reseller agreement, A1-7, casts doubt on whether the 2012 Reseller Agreement was final. *See* Dkt. 31 at 2. This is a red herring: the "later draft" is identical in every substantive

---

[2] The 2012 Navy Contract between the Navy and Planet 9 included line items for both the 18 licenses and related technical support, totaling $15,240. A.227-28. The Navy paid Planet 9 for the 2012 Navy Contract on October 1, 2012, in an amount totaling approximately $15,281. *See* A9 (noting that $10,696.96 is "70% of what the Navy sent to us"); A11. Planet 9 then paid Bitmanagement €8,176.25—equating to $10,696,96—on October 16, 2012, as shown on Bitmanagement's bank statement. A.2018; A9. Planet 9's payment to Bitmanagement included the $4,222.98 referenced in the 2012 Reseller Agreement, A.256, as well as additional payment for approximately 70% of the value of the technical support services provided under the 2012 Contract. The percentage of the Navy's payment retained by Planet 9 reflected Planet 9's fee as a reseller.

respect to the 2012 Reseller Agreement.[3]  Both provide the same price, delivery, and license terms, including a notation that the product contracted for was a "PC license" of BS Contact, and that "BS Contact [would] be enabled by the Licensor for 18 PCs."  *Compare* A1-7 *with* A.256-57.  Either version of the 2012 Reseller Agreement encapsulates the key terms by which the parties intended to be bound and either version accurately memorializes the agreement between the parties.[4]

Finally, the Government also speculates that the parties may not have "ever reach[ed] a final written agreement for this transaction."  Dkt. 31 at 2.  Of course, if that were true, the Government's liability defense would collapse, because it would mean that the Government illegally obtained its 18 BS Contact Geo licenses from a company with no contract to resell those licenses.  *See* Dkt. 29 at 6.

### B. The 2012 Reseller Agreement Is Properly Authenticated and Admissible Under Federal Rules of Evidence 803 and 902

Even if the 2012 Reseller Agreement were not admissible as the complete and binding agreement between Bitmanagement and Planet 9 regarding resale of licenses to the Navy (which it is), the agreement is also admissible as a business record.  F. R. Evid. 803(6) permits the admission of a record that is "[1] made at or near the time by, or from information transmitted

---

[3] The two documents are completely identical except for a few non-substantive differences: the earlier dated version states that Planet 9 "is permitted to *provide* the software" to the Navy, while the later dated version states that Planet 9 "is permitted to *resell* the software." A.256, A6 (emphasis added).  The later dated version also adds to the cover page the phrase "Planet9 Studios acting as reseller" and notes that Planet 9 is "hereinafter referred to as 'Licensee' or 'Reseller.'"  *Compare* A.251 *with* A1.

[4] To the extent the later-dated version of the document is relevant to the Court's consideration of Bitmanagement's claims, Bitmanagement is prepared to offer it as a business record and a valid and binding agreement just as it has with respect to the June 14, 2012 document.

by, a person with knowledge, [2] if kept in the course of a regularly conducted business activity, and [3] if it was the regular practice of that business activity to make the [record], [4] all as shown by the testimony of the custodian or other qualified witness, [5] unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1996) (citing *id.*). Documents that constitute business records are self-authenticating and require no extrinsic evidence of authenticity to be admitted. *See* F. R. Evid. 902(11). "Because of the general trustworthiness of regularly kept records and the need for such evidence in many cases, the business records exception has been construed generously in favor of admissibility." *Conoco*, 99 F.3d at 391.

The 2012 Reseller Agreement is an admissible business record. The agreement was prepared in the course of a regularly conducted business activity, namely Bitmanagement's licensing and sale of its software, which it often accomplished via third-party resellers.[5] Schickel Decl. ¶¶ 3-4. As Mr. Schickel testifies, the agreement memorialized the terms of Bitmanagement's agreement to sell 18 BS Contact licenses to Planet 9 for resale to the Navy, and Bitmanagement subsequently emailed the document as an attachment to Planet 9. Schickel Decl. ¶¶ 5-7; A.2011. From the time it was drafted, Bitmanagement saved and stored the agreement on a firm server consistent with its regular record management procedures. Schickel Decl. ¶ 4. Finally, there is no "lack of trustworthiness" that the agreement encapsulates the key terms of Bitmanagement and Planet 9's agreement regarding the sale of 18 licenses to the Navy in 2012. *See supra* at 2-4. Both parties fully performed under the agreement and, despite every opportunity to explore the issue during discovery, the Government has proffered no evidence

---

[5] Indeed, the Government concedes that Bitmanagement "worked closely" with Planet 9 "to sell and market its products in the United States." Dkt. 27 at 8, 31.

suggesting the terms of the unsigned agreement were not followed or that some other contract terms governed their relationship.

The Court should overrule the Government's objection to evidence regarding the 2012 Reseller Agreement and deny the Government's motion to strike the 2012 Reseller Agreement.

**II.     Deposition Testimony Regarding the Government's Investigation of Its Installation of BS Contact Geo On Non-Navy Computers Need Not Be Admitted for Summary Judgment**

The Court need not consider this deposition testimony for purposes of the Government's copyright infringement liability. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."); *see* Mot. for Summary Judgment at 22 (establishing Government's unlawful copying of BS Contact Geo through installation onto Navy computers). Bitmanagement reserves the right to introduce this testimony at trial or another later point should it become relevant.

**III.    Deposition Testimony Regarding the Government's Removal of BS Contact Geo Software Need Not Be Admitted for Summary Judgment**

Although the Court need not consider this deposition testimony for purposes of the Government's copyright infringement liability, Bitmanagement reserves the right to introduce this testimony at trial or another later point should it become relevant.

**REDACTED VERSION**

Dated: August 1, 2018            Respectfully Submitted,

/s/ Carl J. Nichols
Carl J. Nichols
*Counsel of Record*
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: carl.nichols@wilmerhale.com

*Of Counsel*
Adam Raviv
Leon T. Kenworthy
Michael Carpenter
Kirsten Donaldson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: adam.raviv@wilmerhale.com
        leon.kenworthy@wilmerhale.com
        michael.carpenter@wilmerhale.com
        kirsten.donaldson@wilmerhale.com

Allison Trzop
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: allison.trzop@wilmerhale.com


*Counsel for Bitmanagement Software GmbH*