# In the United States Court of Federal Claims

No. 16-840C
(Filed: March 22, 2019)

```
*************************************
                                    *
BITMANAGEMENT SOFTWARE              *
GMBH,                               *
                                    *
              Plaintiff,            *
                                    *
       v.                           *
                                    *
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
*************************************
```

## ORDER

On February 27, 2019, Plaintiff, Bitmanagement Software GMBH ("Bitmanagement"), filed a Motion *In Limine* to Exclude In Part the Testimony of Defendant's Expert Witness, David A. Kennedy. *See* ECF No. 53. On March 6, 2019, Defendant, the United States (the "Government"), filed its timely response. *See* ECF No. 55. On March 11, 2019, Bitmanagement filed its timely reply. *See* ECF No. 59.

A motion *in limine* is a "preliminary motion that serves a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly would be inadmissible for any purpose." *PR Contrs., Inc. v. United States*, 69 Fed. Cl. 468, 469 (2006); *see Baskett v. United States*, 2 Cl. Ct. 115, 116 (1986) ("A motion in limine is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters."). The bases for excluding expert testimony are Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Rule 702 of the Federal Rules of Evidence permits a witness to testify as an expert if:

> [1] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; [2] the testimony is based on sufficient facts or data; [3] the testimony is the product of reliable principles and methods; and [4] the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party proposing an expert witness bears the burden of establishing certain admissibility requirements necessary to testify.  *Bourjaily v. United States*, 483 U.S. 171, 175–176 (1987).  In addition, the U.S. Supreme Court in *Daubert* obligates the trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  "Reliability," in this sense, "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 592–93.  The *Daubert* factors were applied to all expert testimony by *Kumho Tire*.  526 U.S. at 147–49.

### I. BITMANAGEMENT'S POSITION REGARDING MR. KENNEDY'S TESTIMONY

Bitmanagement argues that Mr. Kennedy's testimony is unreliable because he applied an incorrect legal standard in calculating Bitmanagment's actual damages.  *See* ECF No. 53 at 6–9; ECF No. 59 at 2–7.  Mr. Kennedy's calculations are "based on the number of copies allegedly *used* by the Navy rather than *made* by the Navy," which, according to Bitmanagement, rests on an incorrect interpretation of the word "use."  ECF No. 53 at 6 (emphasis in original); ECF No. 59 at 1.  In support, Bitmanagement relies on: *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006); *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352 (6th Cir. 2007); and *Gaylord v. United States*, 678 F.3d 1339 (Fed. Cir. 2012).  *See* ECF No. 53 at 7–9.

In *Wall Data*, the Los Angeles County Sheriff's Department purchased a specific number of licenses to install specialized software onto a specific number of computers, but instead installed the software on virtually every computer in its facility.  447 F.3d at 773–75.  The Ninth Circuit upheld the jury's damage award that was based on the number of unauthorized copies made by the Sheriff's Department.  *Id.* at 786–87.

In *Thoroughbred Software*, the defendant was in the business of renting out computers to the public that were pre-installed with certain software, including unauthorized copies of the plaintiff's software.  488 F.3d at 355–58.  The Sixth Circuit reversed the district court's finding that "there were no actual damages for the copies that were unused and/or inaccessible to [defendant's] customers," and instead held the defendant liable "for the unpaid license fees for all the unauthorized copies it made, regardless of whether these copies were accessible to or used by [defendant's] customers."  *Id.* at 359–60.

2

In *Gaylord*, the U.S. Postal Service issued stamps featuring a photograph of the plaintiff's sculpture without first obtaining permission to depict the sculpture. 678 F.3d 1339, 1341. The Federal Circuit cited favorably to *Thoroughbred* in finding that "[w]hen . . . the plaintiff cannot show 'lost sales, lost opportunities to license, or diminution in the value of the copyright,' many circuits award actual damages based on 'the fair market value of a license covering the defendant's use.'" *Id.* at 1343 (citing *Thoroughbred*, 488 F.3d at 359–60) (citations omitted). The Court then remanded for a determination of appropriate license fees for the three categories of infringing goods at issue. *Id.* at 1344.

Bitmanagment also distinguishes *Deltak, Inc. v. Advanced Systems, Inc.*, where the defendant produced 50 copies of a copyrighted marketing pamphlet, distributed 15 of those copies to customers, and retained the remaining 35 in a warehouse. 767 F.2d 357, 359–60 (7th Cir. 1985); ECF No. 59, at 5–7. The Seventh Circuit held that "[t]he value of the infringer's use is a permissible basis for estimating actual damages." *Deltak*, 767 F.2d at 360–61. The Court explained that "[t]he primary value of these marketing tools, when in the hands of customers, was to increase sales . . . ." *Id.* at 361. Bitmanagement argues that here, the value to the Navy was having the software available on every computer in its network because it did not know in advance where it would be needed. ECF No. 59, at 5–6. Therefore, according to Bitmanagement, the Navy's "use" was installing the software on its computers. *See* ECF No. 59, at 6–7.

Bitmanagement also argues that Mr. Kennedy's opinion that only 579 copies of the software were actually used by the government is not based on sufficient facts or data because no logs were retained showing the number of individuals that used the software during the first third of the damages period. *See* ECF No. 53 at 9–11; ECF No. 59 at 8–14. Because "any risk of uncertainty [must be placed] upon the wrongdoer rather than upon the injured party," Bitmanagement argues that Mr. Kennedy's testimony must be excluded. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996).

Bitmanagement further suggests Mr. Kennedy's opinion rests on unreliable data because he based his royalty on the "self-serving assumption" that Bitmanagement's software could not be used outside of the SPIDERS 3D environment, when in fact it automatically became the default program for viewing any three-dimensional data file after it was installed. *See* ECF No. 53 at 9–10; ECF No. 59 at 12–14.

## II.   THE GOVERNMENT'S POSITION

The Government maintains Mr. Kennedy applied the correct standard and that none of the cases cited by Bitmanagement support its position that compensation must be based on the total number of technical infringements. ECF No. 55, at 5.

With respect to *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006), the government contends that "the Ninth Circuit upheld jury instructions that were focused on 'the actual use made by the Los Angeles Sheriff's department of the plaintiff's work" and affirmed the award, even though '[i]t [was] not clear how the jury calculated this award.'" ECF No. 55, at 5 (quoting *Wall Data*, 447 F.3d at 786–87).

The Government argues that *Thoroughbred Software Int'l, Inc. v. Dice Corp*, 488 F.3d 353 (6th Cir. 2007), is factually distinguishable because there, a different method was used to copy the software and the "defendant's conduct and business strongly suggested that it benefited from the use of copies it characterized as 'unused.'" ECF No. 55, at 5.

The Government claims that *Gaylord* is distinguishable because the Court focused on the different uses of the copyrighted work in relation to the three categories of goods identified. ECF No. 55, at 6. The Government also maintains *Gaylord* is distinguishable because, on remand, the parties agreed that "no damages would be awarded for stamps used to send mail," which was one category of infringing goods. ECF No. 55, at 6 (quoting *Gaylord v. United States*, 777 F.3d 1363, 1356 (Fed. Cir. 2015) ("*Gaylord III*")).

The Government contends that *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357 (7th Cir. 1985), supports its position because the Seventh Circuit rejected the plaintiff's assertion that it was entitled to damages on all 50 copies of the pamphlets, despite the fact that only 15 copies were actually distributed to customers. ECF No. 55, at 7; *Deltak*, 767 F.2d at 360–61. There, the Court explained, "we see no reason that damages calculated on the value of use method should vary with the number of copies the infringer produced, at least where that number differs from the number of copies used by the infringer." *Deltak*, 767 F.2d at 360–61.

The Government also argues that the data Mr. Kennedy relied on is reliable because: (1) Bitmanagement did not file a motion *in limine* to exclude the data; (2) both parties rely on the data to support their respective proposed facts; and (3) "a knowledgeable Government witness testified that the . . . data was reliable." ECF No. 55, at 8.

Furthermore, the Government argues that there is no evidence that the Navy used Bitmanagement's software outside the Navy's SPIDERS 3D platform. ECF No. 55, at 9.

### III.  CONCLUSION

Mr. Kennedy relied on an incorrect legal standard in his "actual damages" calculations. Of the cases discussed above, *Gaylord* is the most important, because it is the only one dealing with a copyright case, and it is controlling for this Court. In that case, the Federal Circuit stated: "We conclude that the methods used to determine 'actual damages' under the copyright damages statute, 17 U.S.C. § 504, are appropriate for measuring the copyright owner's loss." *Gaylord v. United States*, 678 F.3d 1339, 1343 (Fed. Cir. 2012). Section 504 states (in relevant part): "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." 17 U.S.C. § 504. The infringement referred to in the submissions regarding this motion is copying. Therefore, the starting point for the damages calculation is the damage caused to the copyright owner by the government in making the unauthorized copies. Therefore, the number of unauthorized copies must be determined. Once this figure has been

determined, then the inquiry becomes what is "the fair market value of a license covering the defendant's use"—the use in this case being the number of unauthorized copies made by the government. *See Gaylord*, 678 F.3d at 1343.

It is important not to confuse an infringement of copyright case with an infringement of patent case. The former sets out as acts of infringement: copying, preparation of derivative works, public distribution, public display, and public performance. *See* 17 U.S.C. § 106 (exclusive rights in copyrighted works); 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner as provided by [section] 106 . . . is an infringer of the copyright or right of the author"). The latter speaks of "use" of the patented invention. *See* 35 U.S.C. § 271(a) ("whoever without authority makes, *uses*, offers to sell, or sells any patented invention . . . infringes the patent.") (emphasis added).

Finally, the Court finds of no moment the fact that in *Gaylord*, on remand, the parties agreed to damages for stamps used to send mail. What is significant is that the Federal Circuit remanded the case to the Court of Federal Claims with the instructions to consider this use in its new damages calculation. *Gaylord*, 678 F.3d at 1344.

Because the Court finds that Mr. Kennedy's testimony is unreliable because his calculations were based on an incorrect legal standard, there is no need to separately address whether Mr. Kennedy also utilized unreliable data.

For these reasons, the Court hereby **GRANTS** Plaintiff's Motion *in Limine*.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge