# United States Court of Appeals
# for the Federal Circuit

_____

**BITMANAGEMENT SOFTWARE GMBH,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2020-1139

_____

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00840-EJD, Senior Judge Edward J. Damich.

_____

Decided: February 25, 2021

_____

ADAM RAVIV, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for plaintiff-appellant. Also represented by BRENT GURNEY; MARK CHRISTOPHER FLEMING, Boston, MA.

SCOTT DAVID BOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, GARY LEE HAUSKEN, PATRICK C. HOLVEY; RICHARD JAMES HUBER, Office of General Counsel, United States Department of the Navy, Washington

Navy Yard, DC; ANDREW PAUL ZAGER, United States Navy, Alexandria, VA.

—————————————

Before NEWMAN, DYK, and O'MALLEY, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Concurring opinion filed by *Circuit Judge* NEWMAN.

O'MALLEY, *Circuit Judge*.

In 2013, the United States Navy ("Navy"), through the Naval Facilities Engineering Command ("NAVFAC"), copied BS Contact Geo version 8.001, copyrighted graphics-rendering software created by German company Bitmanagement Software GmbH ("Bitmanagement"), onto all computers in the Navy Marine Corps Intranet. No express contract or license agreement authorized the Navy's actions. In 2016, Bitmanagement filed a complaint against the government in the United States Court of Federal Claims ("Claims Court"), alleging copyright infringement pursuant to 28 U.S.C. § 1498(b). After trial, the Claims Court found that, while Bitmanagement had established a prima facie case of copyright infringement, the Navy was not liable because an implied license permitted it to make the copies. *See Bitmanagement Software GmbH v. United States*, 144 Fed. Cl. 646 (2019). Bitmanagement appeals from that decision.

We do not disturb the Claims Court's findings. The Claims Court ended its analysis of this case prematurely, however, by failing to consider whether the Navy complied with the terms of the implied license. The implied license was conditioned on the Navy using a license-tracking software, Flexera, to "FlexWrap" the program and monitor the number of simultaneous users. It is undisputed that the Navy failed to effectively FlexWrap the copies it made and,

thus, that Flexera tracking did not occur as contemplated by the implied license. The Navy's failure to comply creates liability for infringement. We therefore vacate the Claims Court's decision and remand for a calculation of damages.

## I. BACKGROUND

### A. The Parties and the Software

Bitmanagement develops software for rendering three-dimensional graphics. Peter Schickel, CEO, and Alex Koerfer, Financial Officer, co-founded the company in 2002. One of Bitmanagement's products is BS Contact Geo, a three-dimensional visualization program, which Bitmanagement first released in 2006. BS Contact Geo enables the visualization of geographic information in third-party hardware and software products. It renders realistic terrain and city models and allows a user to position virtual objects using geographic coordinates.

Bitmanagement primarily licenses its software via "PC" or "seat" licenses, which allow one installation of the software onto one computer per license. Each copy of the BS Contact Geo software includes both a desktop executable file ("EXE version") and a web browser plugin file ("OCX version"). The EXE component launches the software as a standalone application whereas the OCX component launches the software within a web browser.

In 2005, Bitmanagement began working with David Colleen, CEO of software reseller Planet 9 Studios, Inc. ("Planet 9"), to market and sell Bitmanagement's products in the United States. Bitmanagement and Planet 9 executed a Finder's Fee Agreement, which provided "for support of the sales activities of [Bitmanagement] and for the sole compensation of [Planet 9] in respect of [its] activities regarding support of [Bitmanagement] sales activities" and clarified Planet 9 was "neither entitled to represent [Bitmanagement] in any legal or other transaction nor to make any binding or nonbinding statement o[n] behalf of

[Bitmanagement].” J.A. 10057–58 ¶ 36. Planet 9 was typically compensated for reselling Bitmanagement's software with a commission pursuant to a reseller agreement attendant to each sale.

The Navy began development of SPIDERS 3D, “a web-based platform that provides a virtual reality environment for NAVFAC engineers and technicians to view and optimize configurations of Navy installations, bases, and facilities,” in 2006. *Bitmanagement*, 144 Fed. Cl. at 649. SPIDERS 3D is located on NAVFAC's internal enterprise portal and is thus only accessible to individuals with a Department of Defense Common Access Card or NAVFAC-sponsored access permissions. SPIDERS 3D requires a three-dimensional visualization software to provide visualization of Naval facilities. To fulfill this need, Alex Viana, a NAVFAC deputy program manager, approached Colleen from Planet 9, who recommended Bitmanagement's BS Contact Geo.

Thereafter, the Navy purchased copies of the Bitmanagement BS Contact Geo system, through intermediary Planet 9, on three occasions: one copy purchased in 2006 for $990, 100 copies purchased in 2008 for $30,000, and 18 copies purchased in 2012 for $5,490. Each transaction was embodied in a written contract that included the corresponding number of PC seat licenses, as we next discuss.

## B. 2006 Purchase

In September 2006, the Navy purchased, for testing purposes, one PC license of BS Contact Geo version 7.000 from Planet 9 for $990. To accomplish the transaction, Bitmanagement and Planet 9 executed a software license agreement wherein Bitmanagement conferred “1 PC license” to Planet 9 as the licensee and permitted Planet 9 “to resale [sic] and/or to provide these licenses of BS Contact Geo to [NAVFAC].” J.A. 5097. The agreement specified that the license “shall be enabled by the Licensor for

PC with computername '……………………….' (to be mutually agreed upon)." *Id.*

Thereafter, Viana advised Planet 9 of an issue with Bitmanagement's default licensing scheme. In November 2006, Colleen relayed the message to Bitmanagement, explaining that Bitmanagement's default licensing scheme was incompatible with the Navy's secure intranet because the Navy could not approve BS Contact Geo if, as was Bitmanagement's normal practice, the end user would be required to contact Bitmanagement for a license key in order to use the program on a particular computer. Schickel responded on behalf of Bitmanagement that Bitmanagement was "open for any licensing scheme that suits the US Navy better" and was "willing to do [its] utmost to enable [another] licensing functionality, if requested." J.A. 6986. In an email to Schickel and Colleen, Viana responded that the Navy needed a copy of BS Contact Geo that included the license key and that was not PC-specific because the Navy did not know "what machine(s) the application will be tested on." J.A. 6985. Viana also noted that the Navy anticipated needing "an initial 15 licenses, with a potential for as many as 100 or more licenses later on." *Id.* In response, Bitmanagement, through intermediary Planet 9, provided BS Contact Geo to the Navy with two licensing keys that were not PC specific.

In May 2007, at the Navy's request, Bitmanagement provided the Navy with a "silent installer for BS Contact Geo intended for bulk installations," which, Schickel explained, was "helpful for an administrator to do installations on a large scale even on remote computers connected via intranet or internet." J.A. 5736.

### C. 2008 Purchase

In February 2008, the Navy submitted to Planet 9 a $30,000 purchase order ("the 2008 Navy Purchase Order") for 100 seat licenses of BS Contact Geo. Attendant to that purchase, Bitmanagement and Planet 9 executed a second

licensing agreement ("the 2008 Reseller Agreement") wherein Bitmanagement authorized Planet 9 to resell "100 PC licenses" to the Navy.  J.A. 7001.

Though the 2008 Navy Purchase Order specified version 7.038 of BS Contact VRML and X3D,[1] in May 2009, Bitmanagement delivered a newer version, BS Contact Geo version 7.204.  A year later, in 2010, the Navy had twenty remaining licenses from the 2008 Purchase Order that it had not yet deployed to Navy computers.  In September 2010, Bitmanagement agreed to upgrade the undeployed licenses to version 7.215 of BS Contact Geo for an additional $125 per license.

### D. 2012 Negotiations, Purchase, and Deployment

The Navy, Planet 9, and Bitmanagement began discussing another license purchase in April 2011.  Planet 9 relayed to Bitmanagement that the Navy was experiencing issues managing their individual seat licenses and had asked to "revisit the discussion of a floating license scheme."  J.A. 5769.  On April 21, 2011, Bitmanagement responded and proposed three "license tracking" options:

> Option 1: No limitation in the software at all.  Licenses can be tracked by a word document or table stating the computer and/or person using it.  Distribution to the Navy only.

> Option 2: BS Contact client tracking: BS Contact checks at startup how many other BS Contact clients are running in the same sub-domain.  If too many BS Contact client will notify the user.

> Option 3: Server tracking: A 24/7 server in the domain/sub-domain maintains a counter.  If the

---

[1]    BS Contact VRML and X3D was a predecessor to BS Contact Geo version 8.001.  J.A. 10059 ¶ 47.

number of BS Contact clients is reached the BS
Contact client requesting will notify the user.

J.A. 5767–68.

Viana followed up with Colleen in June 2011, indicating an interest in Option 3. Viana explained that NAVFAC had an existing floating license server tracking application, Flexera, that could be used to track BS Contact Geo with no alterations to the program. Flexera is a server-based program used to limit the number of simultaneous users of a "Flexera enabled"—or "FlexWrapped"—software based on the number of available licenses. When a user opens a FlexWrapped program, the program alerts the Flexera tracking server that the program is in use. The FlexWrapped program sends a similar alert when the program is no longer in use. The Flexera license manager thus limits the number of users of FlexWrapped software to the number of licenses that a user owns.

On June 8, 2011, Colleen relayed the Navy's preference for Option 3 to Bitmanagement. Colleen noted that he had "an order from [the Navy] for 20 seats of BS Contact" and proposed, "try[ing] these 20 seats on the floating license server to see how they work." J.A. 5766. Schickel responded on June 10, 2011, "[l]et's go for the floating license server approach." J.A. 5765.

On November 4, 2011, Viana informed Schickel that the Navy wanted to deploy the 20 undeployed licenses from the 2008 Purchase Order but wanted "to centrally manage the utilization of the 20 licenses . . . within the Navy's [Navy Marine Corps Intranet ("NMCI")] network" in order to "better understand user demand . . . and manage the growth of future licenses." J.A. 7046. Viana advised Schickel that the Navy was preparing an agreement between NAVFAC and Bitmanagement "formalizing [NAVFAC's] approach to manage and deploy the licenses from the server rather than individual seats." J.A. 7046–47. Viana indicated that, with this approach, he was

"extremely confident" that purchases of upgrades and additional licenses would be justified. J.A. 7047. Schickel responded, "thank you very much for your e-mail . . . and great news. We are looking forward to receiv[ing] your draft agreement." J.A. 7046.

In a November 9, 2011 email, Viana explained to Schickel the Navy's plans with respect to deploying BS Contact Geo:

> My strategy is to get the current licenses of BS Contact Geo version 7.215 deployed with the server license management software. Then we will push it out to several of the NMCI realms to begin tracking the usage and demand signal of the 20 license keys. . . . [T]hen we (Navy) will issue a purchase order through one of our contracting mechanisms to procure X number of licenses of the new version.

J.A. 7046. Viana emailed Koerfer on November 24, 2011, offering a similar explanation:

> Wanted to make sure we have the same understanding of our planned approach for BS Contact Geo with regards to the user's agreement. We currently have 20 PC licenses of BS Contact Geo version 7.215 which we have not deployed and are requesting to manage from our Navy server. This will be accomplished by utilizing the software application AdminStudio by Flexera in conjunction with BS Contact Geo from our server. *This will allow us to track the use of the 20 licenses across a broad spectrum of the NMCI realm (versus having those 20 licenses mapped to individual PCs).* Once we have successfully implemented this approach, we will be able to document (through the AdminStudio) the usage of the 20 BS Contact Geo licenses and enable us to justify the purchase of additional BS Contact Geo licenses in the future.

J.A. 5832 (emphasis added).  Koerfer responded on behalf of Bitmanagement "[t]hat is our understanding as well" and that "[t]he user agreement in princip[le] covers your approach from our point of view." J.A. 5831. The Navy and Bitmanagement thereafter exchanged draft vendor proposals, but none was executed.

On January 16, 2012, Planet 9 confirmed the agreed upon licensing scheme with Bitmanagement, stating that the 20 undeployed existing licenses, as well as 30 new licenses, of BS Contact Geo would be available under "the Navy's floating license system." J.A. 5856. Koerfer replied "ok." *Id.*

On January 20, 2012, after reducing the number of new licenses to account for Planet 9's reseller margin, Planet 9 sent Viana a license proposal including the 20 undeployed licenses from the 2008 Navy Purchase Order and 18 new copies of BS Contact Geo 7.215. On May 21, 2012, the Navy submitted a purchase order to Planet 9 ("the 2012 Navy Purchase Order") for 18 BS Contact Geo Version 7.215 Licenses "enabled by NAVFAC using Flexera Software's FlexWrap utility" for a total cost of $5,490. J.A. 7083. The 2012 Navy Purchase order also included a contract line item for 75 hours of technical support. J.A. 7084.

On June 13, 2012, after execution of the 2012 Navy Purchase Order, Bitmanagement delivered to NAVFAC a "no cost" modification in the form of BS Contact Geo version 8.001, rather than version 7.215, "under the same terms of the recently awarded BS Contact Geo license procurement contract with NAVFAC." J.A. 7181. Bitmanagement delivered version 8.001 with "a silent installer capability as requested for bulk installation." *Id.*

Following delivery of BS Contact Geo version 8.001, Bitmanagement sent Planet 9 a written reseller agreement ("2012 Reseller Agreement").  The agreement authorized Planet 9 to resell 18 PC-licenses of BS Contact Geo version 7.215 or version 8.001 to NAVFAC.  Planet 9 objected to

the initial document's discussion of Planet 9 as an "end user" rather than a "reseller." In September 2012, Bitmanagement sent a substantively identical agreement revising the language. The 2012 Reseller Agreement was never signed. It is undisputed, however, that Planet 9 and Bitmanagement reached an agreement.

On July 3, 2012, the Navy contacted Bitmanagement about the Navy's inability to use more than one license at a time and an incompatibility between the installation file and the Flexera software. Bitmanagement delivered a new installation file on July 23, 2012, so that the software could be FlexWrapped. It billed its time to modify the file pursuant to the 2012 Navy Purchase Order.

Over the next year, the Navy regularly updated Bitmanagement on its progress toward broad deployment on BS Contact Geo. *See, e.g.*, J.A 5914 (Viana to Schickel and Colleen: "Wanted [to] provide you an update of our efforts to deploy BS Contact Geo within NMCI."); J.A. 5917 (Viana to Schickel and Koerfer: "[W]e are working necessary processes to enable the deployment of BS Contact Geo across all Navy computers."); J.A. 5983 (Viana to Schickel and Koerfer: "Once certified [the Navy] will push the application to all 350,000+ NMCI computers and we will begin monitoring and reporting the usage through the Flex License Manager."). Bitmanagement's responses to these messages were generally positive and encouraging. J.A. 5917 (Schickel to Viana: "[T]hank you for your encouraging e-mail."); J.A. 5966 (Schickel to Viana: "[T]hanks for the good news!").

The Navy began widespread deployment of BS Contact Geo version 8.001 to the NMCI network in July 2013. The program remained on NMCI computers through at least September 2016. During that time, Flexera "did not monitor or control the use of the BS Contact Geo plugin," i.e., the OCX component of the software was not FlexWrapped.

J.A. 10067–68 ¶ 95.  The Navy did not purchase any additional copies of BS Contact Geo.

## E. Claims Court Proceedings

On July 6, 2016, Bitmanagement filed an application to register BS Contact Geo version 8.001 with the United States Copyright Office.  On July 15, 2016, Bitmanagement filed suit against the government in the Claims Court alleging that the Navy infringed its copyright.

The Claims Court held a six-day bench trial from April 22–29, 2019.  Following post-trial briefing, in a September 9, 2019, opinion, the court held that the government was not liable for copyright infringement.  Specifically, the Claims Court found: (1) Bitmanagement made a prima facie case of copyright infringement; and (2) no express agreement granted the Navy a license to install BS Contact Geo on all of the Navy's computers; but (3) the Navy had met its burden to show that Bitmanagement authorized the Navy to copy BS Contact Geo version 8.001 across the Navy's NMCI network of computers.  *Bitmanagement*, 144 Fed. Cl. at 655–56.

The Claims Court's conclusions as to the first two issues are not challenged on appeal.  As to the third issue, the court found, based on the above recited facts, "it is clear that Bitmanagement authorized the Navy to deploy—i.e., copy—BS Contact Geo version 8.001 across the Navy's NMCI network." *Id*. at 656.  The Claims Court explained that Bitmanagement always understood the Navy's desire for a product suitable for broad deployment and consistently assisted the Navy in achieving that goal by, for example, providing a license file that was not PC-specific, providing a silent installer, and modifying the installation file for Flexera compatibility.  *Id*.  The Claims Court also considered the exchanges between the Navy and Bitmanagement relating to a "floating license server approach" and, thereafter, the various updates from the Navy on its progress toward broad deployment.  *Id*. at 656–57.  The

Claims Court concluded, "[t]ogether, these interactions un-equivocally show that Bitmanagement was not only aware that the Navy planned to install BS Contact Geo 'across a broad spectrum of the NMCI realm' but also that Bitman-agement authorized such installations." *Id.* at 657.

The court further found that Bitmanagement agreed to this scheme "because Flexera would limit the number of simultaneous *users* of BS Contact Geo, regardless of how many copies were installed on Navy computers." *Id.* at 648. It reasoned that Flexera would render the actual number of copies irrelevant and provide the Navy with a necessary tool for determining how many additional licenses to pur-chase. *Id.*

The Claims Court entered judgment in favor of the gov-ernment on September 9, 2019. Bitmanagement timely filed a notice of appeal. We have jurisdiction to hear ap-peals from final decisions of the Claims Court pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

On appeal from the Claims Court, we review legal con-clusions de novo and factual findings for clear error. *Gay-lord v. United States*, 678 F.3d 1339, 1342 (Fed. Cir. 2012). "A finding is 'clearly erroneous' when although there is ev-idence to support it, the reviewing court on the entire evi-dence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gyp-sum Co.*, 333 U.S. 364, 395 (1948). "Where the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differ-ently." *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2121 (2020) (internal quotation marks omitted). Thus, "[a] finding that is 'plausible' in light of the full rec-ord—even if another is equally or more so—must govern." *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017).

Bitmanagement raises three challenges to the Claims Court's decision. It argues: (1) the Claims Court's finding of an implied-in-fact license[2] is not legally supported or factually plausible; (2) an implied-in-fact license between Bitmanagement and the Navy is precluded as a matter of law; and (3) regardless of any implied-in-fact license, the Claims Court erred by failing to address whether the Navy complied with the Flexera condition of the license. We address each argument in turn.

### A. The Claims Court's Finding of an Implied-in-Fact License Is Legally Supported and Factually Plausible

Copyright licenses are a type of contract and, therefore, governed by common law contracting principles. *See Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1130 (9th Cir. 2006) ("Licenses are contracts 'governed by ordinary principles of . . . contract law.'" (quoting *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989))). Thus, as with implied-in-fact contracts, an implied-in-fact license "is one founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (internal quotation marks omitted). Finding such a license ordinarily requires finding: "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). An implied

---

[2]    The Claims Court expressly found that the Navy's mass download of BS Contact Geo was "authorized." The parties treat the court's finding as one of an implied-in-fact contract or license between Bitmanagement and the Navy. We agree with the parties' characterization of the court's decision.

nonexclusive copyright license may be found, however, in the absence of consideration. *See, e.g., Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 574 n.12 (4th Cir. 1994) ("[A]n implied license is necessarily nonexclusive and revocable absent consideration."); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.03[A][8] (2020) ("[N]o consideration is necessary under federal law to effectuate a transfer of copyright ownership that does not purport to require consideration. Note, however, that consideration is necessary to render a nonexclusive license irrevocable.").

Bitmanagement argues that the Claims Court failed to address the prevailing legal test for finding an implied-in-fact license and, instead, improperly engaged in a generalized assessment of the parties' interactions. Appellant's Br. 34–35. Specifically, Bitmanagement argues that the Claims Court was required to apply the Ninth Circuit's "*Effects* factors." Bitmanagement reads the law too narrowly.

Bitmanagement is correct that, in the copyright context, the *Effects* factors, derived from *Effects Associates v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990), are often used to determine whether an implied nonexclusive license may be found. The three factors courts consider are whether "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)). The *Effects* factors are not the exclusive inquiry used by the regional circuits, however. *See* 3 Nimmer & Nimmer, *supra*, § 10.03[A][7] ("Although those three factors, when they exist, may lead to the conclusion that there is a valid implied license, . . . other tests . . . reveal how questionable it is for other courts to transmute those three factors into the only applicable test."). Accordingly, as the Fifth Circuit has explained, "[w]hen the totality of the parties' conduct indicates an

intent to grant such permission, the result is a legal non-exclusive license." *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997) (quoting 3 Nimmer & Nimmer, *supra*, § 10.03[A][7]); *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012) (the existence of an implied license depends on the totality of the parties' conduct). We have similarly, albeit in the patent context, emphasized the relevance of parties' entire course of conduct to the determination of whether an implied-in-fact license exists. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (holding that the "entire course of conduct" is relevant to finding an implied patent license).

The Claims Court did not legally err by considering Bitmanagement and the Navy's entire course of conduct to find an implied-in-fact license. The *Effects* factors, which were first articulated in the context of movie footage created for incorporation into a specific film, are simply too remote from the facts of this case to be useful. *See Effects*, 908 F.2d at 558–59. In cases such as this one, where the copyrighted work at issue is a commercially available software product rather than one made for a specific end-user, it is appropriate to consider the totality of the parties' course of conduct to decide whether an implied-in-fact license exists.

Bitmanagement further argues, regardless of the applicable test, that the record does not support finding a "meeting of the minds." Appellant's Br. 41–44. The government responds that there is no "meeting of the minds" requirement for finding an implied-in-fact license. Appellee's Br. 37. While we reject the government's assertion that a meeting of the minds is irrelevant, we hold that the Claims Court did not clearly err in finding a meeting of the minds on the record before it.

As noted, an implied-in-fact license may be found only "upon a meeting of the minds" that "is inferred, as a fact,

from conduct of the parties showing, in the light of the sur-
rounding circumstances, their tacit understanding." *City
of Cincinnati*, 153 F.3d at 1377 (quoting *Balt. & O.R. Co. v.
United States*, 261 U.S. 592, 597 (1923)).  The government's
contention that this requirement does not exist is, there-
fore, incorrect.

The record, however, supports the plausibility of the
Claims Court's finding of a meeting of the minds.  As dis-
cussed above, the Claims Court considered numerous email
exchanges between Bitmanagement and the Navy.  Based
on those communications, the Claims Court found: (1) Bit-
management understood from the beginning that the Navy
desired to broadly deploy the software; (2) Bitmanagement
agreed to a "floating license server approach" that would
control the use of individual copies of the program installed
on Navy computers; (3) the Navy informed Bitmanagement
on several occasions of its plan to broadly deploy the pro-
gram; and (4) Bitmanagement confirmed that it under-
stood the plan.  *Bitmanagement*, 144 Fed. Cl. at 656–57.
Together, the court concluded, "these interactions unequiv-
ocally show that Bitmanagement was not only aware that
the Navy planned to install BS Contact Geo 'across a broad
spectrum of the NMCI realm' but also that Bitmanagement
authorized such installations."  *Id.* at 657.

Though Bitmanagement would have us read the com-
munications and testimony differently to reach a different
conclusion, and though such a reading is certainly sup-
ported by the record, that is not our place when reviewing
factual findings for clear error.  The Claims Court's finding
of a meeting of the minds is *a* plausible conclusion and thus
is not clearly erroneous.  We must, therefore, defer to the
Claims Court's finding.

During oral argument, counsel for the government con-
tended that Bitmanagement and the Navy made a "mutual
mistake" as to the compatibility of Flexera with BS Contact
Geo.  *See* Oral Arg. at 16:46–17:13, *available at*

http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1139_11032020.mp3.  This admission raises for us grave doubts as to the Claims Court's ultimate finding of a meeting of the minds.  We are dubious whether a meeting of the minds is possible when the parties involved so clearly did not understand the technology.  Even weighing this in the balance, however, the Claims Court's finding remains plausible.  And, as discussed below, our affirmance of the Claims Court's factual finding is not dispositive because the Navy breached a condition precedent of any implied-in-fact license and thus infringed Bitmanagement's copyright.

Because we must defer to the Claims Court's finding of a meeting of the minds, we affirm the Claims Court's finding of an implied-in-fact license between the Navy and Bitmanagement.

### B. The Implied-in-Fact License Between the Navy and Bitmanagement Was Not Precluded

Bitmanagement further argues that the express contracts between the Navy and Planet 9, and between Planet 9 and Bitmanagement, precluded the Claims Court's finding of an implied-in-fact license.  On the facts of this case, we disagree.

It is well established that "the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." *Seh Ahn Lee v. United States*, 895 F.3d 1363, 1370 (Fed. Cir. 2018) (quoting *Bank of Guam v. United States*, 578 F.3d 1318, 1329 (Fed. Cir. 2009)); *see also Klebe v. United States*, 263 U.S. 188, 192 (1923) ("A contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications.").  The preclusion rule, however, is less clearly applicable when the express contracts are not directly between the parties to the implied-in-fact contract.  *Peter v. United States*, 6 Cl. Ct. 768, 780

(1984) ("The rule that the existence of an express contract preempts an implied contract has full effect only when the parties to both contracts are the same."). When such a disconnect exists, a court should apply the preclusion rule only when the totality of the specific facts and circumstances shows that such an agreement was precluded by the first contract. *Cf. Ground Improvement Techs., Inc. v. United States*, 618 F. App'x 1020, 1030 (Fed. Cir. 2015); *see also Normandy Apartments, Ltd. v. United States*, 633 F. App'x 933, 940 (Fed. Cir. 2015).

Application of the preclusion rule was not warranted in this case for three primary reasons. First, Bitmanagement and the Navy were intentional in their decision not to enter into an express contractual relationship. As to the express agreements, the parties stipulated that "[t]here is no privity of contract between the United States and Bitmanagement." J.A. 10057 ¶ 34. Instead, Bitmanagement and the Navy chose to use intermediary Planet 9 to conduct business. J.A. 10057 ¶ 35. Planet 9's Finder's Fee Agreement with Bitmanagement clarified that Planet 9 was "neither entitled to represent [Bitmanagement] in any legal or other transaction nor to make any binding or nonbinding statement o[n] behalf of [Bitmanagement]." J.A. 10057–58 ¶ 36. Second, the topic of the implied-in-fact license in this case, i.e., the license to copy BS Contact Geo onto all Navy computers, is not covered by any express agreement—in fact, no express contract mentions "copies." And third, the express contracts are ambiguous as to how the parties to those contracts understood Flexera would be used. This is all to say that, in this case, the express contracts do not capture or reflect the discussions that occurred between the Navy and Bitmanagement directly. Nor could they, as Planet 9 was prevented from binding Bitmanagement in any way. It is clear, however, that the Navy and Bitmanagement came to a separate understanding, not reflected in the express contracts, which would be unfair to preclude. *Compare* J.A. 5832 (Viana confirming Bitmanagement's

understanding of the Navy's plan to use Flexera "to track the use of the 20 licenses across a broad spectrum of the NMCI realm (versus having those 20 licenses mapped to individual PCs)"), *with* J.A. 5831 (Koerfer agreeing, "[t]hat is our understanding as well. The user agreement in princip[le] covers your approach from our point of view."). For these reasons, we decline to apply the preclusion rule on this record.

## C. The Navy Failed to Comply with the Flexera Condition of the Implied-in-Fact License

Bitmanagement argues that, even if the government establishes that an implied-in-fact license could have covered the Navy's actions, the Navy nevertheless committed copyright infringement by failing to comply with a condition of the license. Appellant's Br. 45–48. Specifically, Bitmanagement contends that use of Flexera was a condition precedent to the Navy copying BS Contact Geo onto all Navy computers. Appellant's Reply Br. 24–30. The government responds that Flexera was merely a covenant such that any grievance raised by Bitmanagement necessarily sounds in contract, a claim that Bitmanagement never asserted. Appellee's Br. 52–54. We agree with Bitmanagement.

Normally, a copyright owner who grants a license to his copyrighted material has waived his right to sue the licensee for copyright infringement and must instead pursue a claim for breach of contract. *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008). "If, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement." *Id.* Whether a licensee acts outside the scope of a contract by failing to comply with a term of the parties' agreement turns on whether that term is a condition that limits the scope of the license or is merely a covenant. *Id.*; *see also* 3 Nimmer & Nimmer, *supra*, § 10.15[A][2] ("If the grantee's violation consists of a failure to satisfy a condition

to the grant (as distinguished from a breach of a covenant), it follows that the rights dependent on satisfaction of that condition have not been effectively granted, rendering any use by the grantee without authority from the grantor.  The legal consequence is that the grantee's conduct may constitute copyright infringement.").  Terms of a license or contract are presumed to be covenants, rather than conditions, unless it is clear that a condition precedent was intended.  *See, e.g.*, *Mularz v. Greater Park City Co.*, 623 F.2d 139, 142 (10th Cir. 1980) ("Where the intention or meaning of a contract is in question as to whether it should be construed as a covenant, or, in the alternative, a condition precedent, the tendency of the courts is to construe it as a covenant or a promise rather than a condition unless it is plain that a condition precedent was intended."); *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998).

As noted, the Claims Court stopped short of reaching this issue.  The court's findings and the undisputed factual record are nevertheless sufficient to allow resolution as a matter of law.

Though the terms of an implied license are by definition not contained in a written instrument, the Flexera term of the implied license between Bitmanagement and the Navy can readily be understood from the parties' entire course of dealings.  The Claims Court did just that when it found that "Bitmanagement agreed to [the] licensing scheme *because* Flexera would limit the number of simultaneous *users* of BS Contact Geo, regardless of how many copies were installed on Navy computers."  *Bitmanagement*, 144 Fed. Cl. at 658 (first emphasis added).  That is, the court found that Flexera was a condition of the implied-in-fact license between Bitmanagement and the Navy.  Flexera would function by limiting, from the time of copying, the number of simultaneous users of the program.  This condition rendered reasonable the otherwise objectively unreasonable decision of Bitmanagement to allow

the Navy to make unlimited copies of its commercial product.

We agree with the court's assessment. This is one of those rare circumstances where the record as a whole reflects that the *only* feasible explanation for Bitmanagement allowing mass copying of its software, free of charge, was the use of Flexera *at the time of copying*. Thus, the Flexera term was clearly a condition rather than merely a covenant. Unlike payment, which is typically considered a covenant, the use of Flexera at the time of copying was critical to the basic functioning of the deal. The timing of Flexera was key because the Navy's tracking of BS Contact Geo users was intended to establish how many additional licenses the Navy would purchase. Without tracking, the Navy would have no basis to purchase more licenses and, consequently, Bitmanagement would have had no reason to enter into the implied-in-fact license. Unlike payment, which can feasibly come at any time after contract performance, Flexera was only useful if it could track, from the beginning, the number of Navy users.

The Claims Court further found, and it is undisputed, that a copy of the BS Contact Geo software consists of "both a desktop executable file (EXE version) and a web browser plugin file (OCX version)." *Id.* at 648 (citing J.A. 10054 ¶ 18). This is significant because, as the parties stipulated, Flexera "did not monitor or control the use of the BS Contact Geo plugin." J.A. 10067–68 ¶ 95. In other words, the OCX component of the software was at no point properly monitored by Flexera. The extent to which the EXE version was monitored by Flexera appears to be disputed. That is, however, of no moment to the analysis because a condition of the implied-in-fact license was that the copies of BS Contact Geo be monitored by Flexera. That condition

could not have been met by monitoring only *half* of each copy.[3]

The Claims Court further found that Bitmanagement established a prima facie case of copyright infringement and that no express agreement authorized the Navy to copy BS Contact Geo onto all Navy computers. Thus, while the Navy had an implied-in-fact license to copy BS Contact Geo onto its computers, the Navy's failure to abide by the Flexera condition of that license renders its copying of the program copyright infringement.

### III. CONCLUSION

Though the Claims Court's finding of an implied-in-fact license is legally supported and factually plausible, the Navy's failure to comply with the Flexera condition of the license renders the Navy's copying outside the scope of that license. Such unauthorized copying is copyright

---

[3]   The government briefly argues that it was not the Navy's responsibility to ensure Flexera compatibility and, thus, it was not responsible for any failure to comply with the condition. Appellee's Br. 51 ("Bitmanagement cannot assert a breach when it knew of the Flexera-enabled requirement but failed to provide software that could properly enable the Flexera feature."). Any potential failure of Bitmanagement to deliver a product that could be FlexWrapped does not, however, excuse the Navy making copies when, as a matter of fact, the program was not being monitored by Flexera. The Navy alone was in a position to verify compatibility and ensure that the condition was met. And, if it is true that the condition was impossible to meet, that simply means the Navy could not have lawfully made the copies under any set of facts.

infringement.[4]   We therefore vacate the Claims Court's judgment and remand for a determination of damages.[5]

---

[4]   We do not disturb the Claims Court's uncontested finding that at least 38 copies of BS Contact Geo 8.001 were authorized based on 38 remaining licenses from the 2012 Navy Purchase Order. *Bitmanagement*, 144 Fed. Cl. at 658 n.10.

[5]   Because Bitmanagement's action is against the government, it is entitled only to "reasonable and entire compensation as damages . . ., including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code." 28 U.S.C. § 1498(b).  This amount may not include non-compensatory or punitive damages. *Gaylord v. United States*, 678 F.3d 1339, 1343 (Fed. Cir. 2012) ("*Gaylord I*").  Contrary to Bitmanagement's argument, *see* J.A. 10002 ¶ 5, it is not entitled to recover the cost of a seat license for each installation.  If Bitmanagement chooses not to pursue statutory damages, the proper measure of damages shall be determined by the Navy's actual usage of BS Contact Geo in excess of the limited usage contemplated by the parties' implied license.  That analysis should take the form of a hypothetical negotiation.  *See Gaylord v. United States*, 777 F.3d 1363, 1368–72 (Fed. Cir. 2015); *Gaylord I*, 678 F.3d at 1342–45.  As the party who breached the Flexera requirement in the implied license, the Navy bears the burden of proving its actual usage of the BS Contact Geo software and the extent to which any of it fell within the bounds of any existing license.  *See* Restatement (Second) of Contracts § 352 cmt. a (Am. L. Inst. 1981) ("Doubts [about the extent of damages] are generally resolved against the party in breach."); *see also Energy Cap. Corp. v. United States*, 302 F.3d 1314, 1326–27 (Fed. Cir. 2002) (noting that uncertainty as to amount of damages does not preclude recovery and that the "risk of

## VACATED AND REMANDED

### COSTS

Costs to Bitmanagement.

---

uncertainty must fall on the defendant whose wrongful conduct caused the damages").

# United States Court of Appeals
# for the Federal Circuit

———————————————

**BITMANAGEMENT SOFTWARE GMBH,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————————

2020-1139

———————————————

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00840-EJD, Senior Judge Edward J. Damich.

———————————————

NEWMAN, *Circuit Judge*, concurring.

I concur in the judgment of copyright infringement, and join the court's order of remand for determination of just compensation. However, I do not share the court's reasoning that there was an implied license from Bitmanagement – although I agree that if such license existed, it was breached by the Navy.

I discern no license, implied or otherwise, for the Navy to make hundreds of thousands of copies of Bitmanagement's commercial software product "BS Contact Geo." The Navy made the copies using Bitmanagement's keys and installation file, and admitted that it distributed the copies throughout the Navy, although without authorization, without license, and without payment. The Navy has

not justified this improper copying; it violates the terms of its purchases of Bitmanagement's product, and violates Bitmanagement's copyright.

Discussion

### *There is no implied license for this massive copying*

The Navy purchased 119 copies of the BS Contact Geo software system over the years 2006–2012, and received a written seat license for each purchased copy.[1] The Court of Federal Claims received undisputed evidence that the Navy made over 429,604 copies of the BS Contact Geo software. Fed. Cl. Op.[2] at 655.

Each purchase of the BS Contact Geo system, in 2006, 2008, and 2012, was accompanied by a written agreement granting a license for each of the 119 copies. Fed. Cl. Op. at 649, 650, 652. The agreements recite explicit "Product Controls," *viz.*, "The source code of the Product is protected by copyright and constitutes a business secret of the Licensor;" J.A. 5087, 5094, 6998, 7004, 7149. "Licensee is not entitled to decompile, alter, reverse assemble or otherwise reverse engineer the Products" and the "Licensee agrees not to re-market, assign, sublicense, transfer, pledge, lease, publish, rent or share Licensee's rights with any third

---

[1]    The Navy's witness Alex Viana, Deputy Program Manager, explained that a "seat license," also called a "PC license," authorizes the purchaser of software to use the software on one computer. J.A. 10058–59; J.A.7153. He testified that "a seat is an individual computer" and "the sale of 10 seat licenses would permit the buyer to install the purchased software onto 10 computers." J.A.1963. It is agreed that the Navy purchased a total of 119 seat licenses during 2006 to 2012.

[2]    *Bitmanagement Software GmbH v. United States*, 144 Fed. Cl. 646 (Fed. Cl. 2019) ("Fed. Cl. Op.").

party without the prior written consent of the Licensor." *Id*. As the majority opinion recognizes, the Navy assured Bitmanagement that the Navy's Flexera system would keep track of usage. Maj. Op. at 19. This Flexera requirement is memorialized in the May 21, 2012 Purchase Agreement between Navy Acquisitions and Planet 9 Systems for 18 copies of the BS Contact Geo system "Enabled by NAVFAC using Flexera." J.A.7083.

The purchases of the 119 copies of the BS Contact Geo software, from 2006 to 2012, were implemented by Navy Purchase Orders, with Planet 9 Systems serving as domestic reseller, at the Navy's request, for these purchases from a foreign supplier. *See, e.g.*, Software License Agreement between Bitmanagement and Planet 9 (Mar. 27, 2008) ("Purpose of Use … Licensee is entitled to resell the licenses to FISC San Diego (NAVY Purchasing) for their respective use as per this agreement.") J.A. 7001.

The Navy admitted in trial testimony that there was no understanding whereby Bitmanagement authorized or intended to authorize the Navy to conduct massive free copying of Bitmanagement's copyrighted BS Contact Geo software system. J.A. 2022–23. The Court of Federal Claims erred in fact and in law, in ruling that there was such an understanding resulting in the Navy having an implied license to make hundreds of thousands of copies of the BS Contact Geo software. Fed. Cl. Op. at 659.

An implied license "is one founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (quotation marks and citation omitted). Further, "[t]he general requirements for a binding contract with the United States are identical for both express and implied contracts." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325

(Fed. Cir. 1997). An implied license requires: "1) mutuality of intent to contract; 2) consideration; and 3) lack of ambiguity in offer and acceptance." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). Failure of any of these conditions precludes the existence of a license, whether express or implied; the Court of Federal Claims erred in finding an implied license, for there plainly was no mutuality of intent, no consideration, and no lack of ambiguity.

The government offered no contrary evidence. Rather, the record shows that both the Navy and Bitmanagement expected that any arrangement for enlarged Navy use would be the subject of future purchase and license agreements, as was the consistent pattern.

The cases cited by the government do not support the copying that the government now defends. The legal issues here are not resolved as the government argues in the cited cases. For example, the government cites *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 562 (S.D.N.Y. 2013), as supporting the government's argument that no meeting of the minds is required to create an implied contract. However, the court held that there was not an implied license, stating:

> The test for determining whether an implied license exists in the copyright context has three elements. The defendant must show that
> (1) the licensee requested the creation of a work;
> (2) the licensor made that particular work and delivered it to the licensee who requested it; and
> (3) the licensor intended that the licensee copy and distribute his work.

*Id.* The court further explained that a meeting of the minds is always required:

> Even those courts that do not require evidence of each of these three elements do require evidence of

a meeting of the minds between the licensor and licensee such that it is fair to infer that the licensor intended to grant a nonexclusive license.

*Id.* (citing *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012)). The other purported authorities cited by the government are similarly inapposite.

The BS Contact Geo software system is a commercial product of Bitmanagement. The government cites work-for-hire precedent as supporting its actions, but the Navy did not hire Bitmanagement to create this product. The extensive precedent on work-for-hire copyright issues is summarized in *Corbello v. Devito*, 777 F.3d 1058 (9th Cir. 2015):

> While we may consider delivery of a copyrighted object as a relevant factor to determine the existence of an implied license, … the copyright statute forbids courts from inferring a transfer of copyright or a license from mere delivery of the material object in which the work is embodied. 17 U.S.C. § 202. Rather, courts should focus primarily on the licensor's objective intent at the time of the creation and delivery of the software as manifested by the parties' conduct.

*Id.* at 1067 (citing *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 755-56 (9th Cir. 2008) (internal quotation marks omitted)).

In *Xtomic, LLC v. Active Release Techniques, LLC*, 460 F. Supp. 3d 1147, 1154 (D. Colo. 2020), the court summarized that "[a]n implied license protects the licensee only to the extent 'the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used.'" (citing *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998)). Here, there plainly was no mutual intent that Bitmanagement would abandon its commercial purpose and grant the Navy unlimited free licenses to copy

and use the BS Contact Geo system.  The record is clear that all participants recognized that the Navy's testing was a prelude to a possible commercial arrangement.  Bitmanagement did indeed hope for wide Navy installation, but not as a gift to the United States.

### Determination of just compensation

The panel majority properly remands for determination of damages, but also offers rulings on the measure of damages, Maj. Op. at 23 n.5.  Damages and the measure thereof were not reviewed by the Court of Federal Claims, and were not presented on this appeal.  The parties have not here briefed nor argued the subject, although it must be determined on remand.  "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983).

Section 2106 of U.S. Code Title 28 governing Judiciary and Judicial Procedure provides that a court of appeals "may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106.  As stated in *Hormel v. Helvering*, 312 U.S. 552 (1941):

> Ordinarily an appellate court does not give consideration to issues not raised below.  For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact.  This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants

> may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.

*Id.* at 556.  The panel majority's ruling on issues that have not been decided on trial, and not presented for appeal, is inappropriate.

## CONCLUSION

I share the conclusion that the Navy infringed Bitmanagement's copyright, and I concur in the remand for determination of just compensation.