IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BITMANAGEMENT SOFTWARE GMBH,<br><br>               Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>               Defendant. | Case No. 16-840 C<br><br>Senior Judge Edward J. Damich |

**PLAINTIFF'S BRIEF REGARDING DAMAGES CALCULATION**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ITEMIZATION OF DAMAGES............................................................................................2

I.      Bitmanagement Should Be Awarded $155,400,000 In Damages.......................................2

        A.      The Appropriate Royalty Base Is At Least 600,000 Copies................................. 2

        B.      Bitmanagement And The Navy Would Have Agreed To A Royalty Rate Of $259 Per Copy ..................................................................................................... 6

II.     Bitmanagement Is Entitled To Pre-Judgment And Post-Judgment Interest ......................12

CONCLUSION......................................................................................................................13

Bitmanagement Damages Itemization ................................................................................ App'x A

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bitmanagement Software GmbH v. United States*,
    144 Fed. Cl. 646 (2019) ............................................................................................ 3, 4, 11

*Bitmanagement Software GmbH v. United States*,
    989 F.3d 938 (Fed. Cir. 2021) .................................................................................. 1, 2, 5, 6

*Davidson v. United States*,
    2018 WL 4087269 (Fed. Cl. Aug. 27, 2018) ........................................................................ 12

*Gaylord v. United States*,
    678 F.3d 1339 (Fed. Cir. 2012) ................................................................................ 1, 2, 6, 12

*General Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983) ............................................................................................................ 12

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) ................................................................................................. 1

*The Boeing Co. v. United States*,
    86 Fed. Cl. 303 (2009) ........................................................................................................ 12

*Thoroughbred Software International, Inc. v. Dice Corp.*,
    488 F.3d 352 (6th Cir. 2007) ................................................................................................ 6

*Wall Data Inc. v. Los Angeles County Sheriff's Department*,
    447 F.3d 769 (9th Cir. 2006) ................................................................................................ 6

**STATUTES**

28 U.S.C. § 1498(b) ..................................................................................................................... 1

28 U.S.C. § 1961 ................................................................................................................... 12, 13

48 U.S.C. § 734 ............................................................................................................................ 4

48 U.S.C. § 1405q ........................................................................................................................ 4

48 U.S.C. § 1421n ........................................................................................................................ 4

48 U.S.C. § 1801 .......................................................................................................................... 4

## INTRODUCTION

Bitmanagement respectfully submits this brief in response to the Court's order that the parties submit "briefing on each party's damages calculation" that "itemize[s] the damages as well as provide[s] the Court with supporting justification." *See* Dkt. 143. Bitmanagement's calculation of the actual damages owed to it for the government's infringement is based on the record evidence presented during the six-day trial. That evidence shows that the correct damages amount is $155,400,000, plus pre- and post-judgment interest. Indeed, that valuation is largely supported by joint exhibits and facts to which the government has stipulated.

When the government infringes a copyright, the copyright owner is entitled to recover "reasonable and entire compensation as damages for such infringement." 28 U.S.C. § 1498(b). In this case, Bitmanagement's "reasonable and entire compensation" is appropriately determined by assessing "the fair market value of a license covering the defendant's infringing use" through a hypothetical negotiation. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164, 172 (2d Cir. 2001); *Gaylord v. United States*, 678 F.3d 1339, 1343 (Fed. Cir. 2012). Here, all copies that the Navy made of BS Contact Geo that were not monitored by Flexera software are infringing copies, because the Navy's implied license required it to use Flexera. *Bitmanagement Software GmbH v. United States*, 989 F.3d 938, 951 (Fed. Cir. 2021).

As explained in more detail below, the evidence at trial showed that the Navy made at least 600,000 copies of BS Contact Geo that were not monitored by Flexera. For these 600,000 copies, unrebutted expert testimony at trial demonstrated that the parties would have agreed in a hypothetical negotiation to a final negotiated price of $259 per copy. Bitmanagement sold BS Contact Geo licenses for $1,046 per copy in 2013, and the Navy agreed to pay $370 per copy of BS Contact Geo in 2015. Applying a 30% volume discount to the $370 price per copy that the Navy agreed to in 2015—or a 75% volume discount to the list price of BS Contact Geo—would

1

result in a final price of $259 per license, for a total of $155,400,000 (600,000 x $259). The Court should therefore enter a damages award for $155,400,000, which reflects the value the parties would have placed on the massive number of copies the Navy made that were not monitored by Flexera. For the Court's convenience, Bitmanagement's damages calculations are summarized in the chart attached as Appendix A.

## ITEMIZATION OF DAMAGES

I. **Bitmanagement Should Be Awarded $155,400,000 In Damages**

As the Federal Circuit explained, damages must be based on what the parties would have agreed to had they conducted a "hypothetical negotiation" at the time of the Navy's infringement. *Bitmanagement*, 989 F.3d at 951 n.5 (citing *Gaylord*, 678 F.3d at 1343 ("[T]he court's task is to determine the reasonable license fee on which a willing buyer and willing seller would have agreed for the use taken by the infringer.")). The Federal Circuit emphasized that the Navy "bears the burden of proving its actual usage of the BS Contact Geo software and the extent to which any of it fell within the bounds of any existing license." *Bitmanagement*, 989 F.3d at 951 n.5. As Bitmanagement explains below and in the briefing on its motion for entry of judgment (Dkts. 138, 141), the Navy cannot carry that burden.

A. **The Appropriate Royalty Base Is At Least 600,000 Copies**

A conservative calculation of the number of infringing copies of BS Contact Geo made by the Navy is **at least 600,000 copies**. That royalty base is arrived at as follows:

1) **The Navy concedes that at least 429,604 copies were installed on the NMCI network**: The government concedes that at least 429,604 copies were made of

BS Contact Geo on the Navy Marine Corps Intranet ("NMCI")[1] network.[2] Dkt. 139 at 17. Therefore, this figure represents the floor for the royalty base. However, this figure significantly understates the total number of copies made, which, as explained below, was at least 600,000 copies.

2) **In the initial deployment in July 2013, the Navy actually installed 558,466 copies onto computers on the NMCI network:** The government claims that no more than the 429,604 copies were made. But that disregards the Navy's own deployment schedule for BS Contact Geo and testimony by Navy witnesses. The deployment schedule shows that the Navy planned to install 558,466 copies of the software beginning in July 2013.[3] And Navy witness Norman Vadnais conceded at trial that BS Contact Geo was, in fact, "deployed to *all* [NMCI] seats"—in other words, one copy of the software was installed on each computer in the network.[4] At a minimum, that would include every computer listed on the deployment schedule, or 558,466 copies.

In addition, Alex Viana—who led the procurement of BS Contact Geo for the Navy—explained in emails leading up to the Navy's mass copying that BS Contact Geo needed "to be *deployed Navy wide* in order to effectively and efficiently utilize the NAVFAC 3D tool [SPIDERS 3D] on an ad hoc basis across the broadest spectrum of weapon platform acquisition stakeholders,"[5] and told Navy witness Dean McCarns that "[w]e are going to ALL NMCI with this push."[6] Mr. Viana conceded in his testimony that that email indicated his "plan to install BS Contact Geo on the entire NMCI network."[7]

Given Mr. Viana's repeated indications that the software would be installed "Navy wide"—or pushed to "ALL NMCI" computers—and Mr. Vadnais's

---

[1] *See Bitmanagement Software GmbH v. United States*, 144 Fed. Cl. 646, 650 n.5 (2019) ("'NMCI' refers to Navy Marine Corps Intranet which is 'the largest private computer network in the world' and comprises all Navy computers in the continental United States.").

[2] P010.8 ("A scan of the NMCI reporting system shows records of 429,604 installs of the software over time.").

[3] *See* J025.9. The Navy's spreadsheet containing the deployment schedule indicates planned installations on 553,286 "Total Seats." *Id.* However, when all the cells indicating seat numbers are properly summed, the spreadsheet specifies 558,466 installations. *See* Ex. 1, Witness Statement of Mr. George L. Graff ("Graff Direct") at 8 n.12 (submitted to the Court on April 15, 2019).

[4] 4/29/19 Tr. (Vadnais) at 1083:5-1083:7 (emphasis added); *see also* Joint Stipulation of Facts, Dkt. 75 ("Stip.") ¶ 80.

[5] P161.

[6] P151.

[7] 4/26/19 Tr. (Viana) at 1003:2-5.

3

testimony that the software was in fact "deployed to all [NMCI] seats," **558,466** is the best and most accurate number of installations.

Finally, the Navy does not actually dispute the validity of the deployment schedule, but instead responds that it includes 415,000 Windows XP computers that were not compatible with BS Contact Geo.  *See* Dkt. 139 at 17.  However, this is a red herring because the Navy later upgraded its NMCI Windows XP computers to Windows 7, which *was* compatible with BS Contact Geo.[8]

Thus, the best and only evidence available shows that the correct number of copies made on the NMCI network beginning in July 2013 was **558,466**.  The government has failed to meet its burden of proof to show that any other number should be used.  The Navy has no better evidence of what was actually installed than the deployment schedule and the testimony and statements of its own witnesses, so, in the event there were any uncertainty (which there is not), the Court should resolve that uncertainty in favor of Bitmanagement.[9]

3) **During the period between the initial deployment in July 2013 and the Navy's un-installation of BS Contact Geo in July 2013, the Navy added 40,000 computers to the NMCI network, bringing the total number of copies made (one copy for each computer) to 598,466.**[10]  The 558,466 computers discussed above reflect the number of copies that were to be deployed on the NMCI network beginning in July 2013 during the initial deployment.  However, 40,000 new computers were added to the NMCI network between July 2013 and July 2016, and according to Mr. Vadnais, BS Contact Geo would have been copied onto all 40,000.[11]  Therefore, the total number of copies should be increased from 558,466 to **598,466** copies (558,466 computers + 40,000 computers = 598,466 computers)**.**

4) **An unknown subset of the 28,000-computer ONE-Net network should be added to the total number of computers on which copies were made**.  ONE-Net is the Navy's non-U.S. network,[12] and includes some computers in U.S. territories, where U.S. copyright laws have the same effect as in the continental

---

[8] *See* 4/29/19 Tr. (Vadnais) at 1093:12-20, 1118:23-1119:1.

[9] Since July 2013 is when the Navy began its infringement through mass installation, that is when the "hypothetical negotiation" between the parties would have occurred.

[10] P010.7-8 (Navy interrogatory response explaining that "[t]he computer count rose as old machines were refreshed with new hardware and additional machines were added to the network").

[11] 4/29/19 Tr. (Vadnais) at 1108:17-22.

[12] 4/29/19 Tr. (Vadnais) at 1100:24-1101:1, 1114:11-25; *see also Bitmanagement*, 144 Fed. Cl. at 650 n.5 ("ONE-NET, for all intents and purposes, is a separate network which is quite simply an NMCI [for] the outside continental United States.").

United States (and for which damages are therefore available).[13] As Navy witnesses conceded, the Navy has no idea how many copies were made onto ONE-Net, and thus cannot carry its burden of proving that the figure was any less than 28,000.[14]

5) **An unknown number of additional copies were made onto non-NMCI computers**. Mr. Viana admitted that he had provided a CD containing a BS Contact Geo license key to at least one person outside the Navy, and that he did not know whether additional copies had been made.[15] Government witnesses acknowledged they did not know the extent of the distribution of any copies outside the Navy.[16] Apparently, the government failed to keep records of any such distributions.

Given the figures above, Bitmanagement's royalty base of at least 600,000 copies is a highly conservative estimate. The number of copies made during the initial deployment of 558,466 and the number of copies made onto the 40,000 additional computers added to the NMCI network total 598,466 known copies, evidenced by the Navy's own documents and its witness, Mr. Vadnais. Rounding that number up to 600,000 is a conservative way of accounting for the unknown number of ONE-Net and non-Navy copies that the government made in breach of the license.

Contrary to the government's suggestions that the Court should focus on only those copies that it can prove were *accessed*, Dkt. 139 at 26-29, *each* of the 600,000 copies made by the Navy infringed Bitmanagement's copyright because *none* of them was monitored by Flexera "*at the time of copying*,"[17] which the Federal Circuit held was a condition of the Navy's implied

---

[13] *See* 48 U.S.C. §§ 734, 1405q, 1421n, 1801.

[14] 4/26/19 Tr. (Chambers) at 885:2-10; 4/29/19 Tr. (Vadnais) at 1117:25-1118:4.

[15] 4/26/19 Tr. (Viana) at 941:22-942:5, 1008:5-17.

[16] *See* 4/26/19 Tr. (Chambers) at 874:11-22; 4/29/19 Tr. (Vadnais) at 1117:25-1118:4.

[17] The Federal Circuit found it was of "no moment" that Flexera may have monitored the desktop executable version of BS Contact Geo because the browser plugin version of BS Contact Geo—which the Navy predominantly relied upon—"was at no point properly monitored by Flexera" and the implied-in-fact license could not have been adhered to "by [the Navy] monitoring only *half* of each copy." *Bitmanagement*, 989 F.3d at 951.

5

license. *Bitmanagement*, 989 F.3d at 950 (emphasis in original); *see id.* at 950-951 ("Flexera was only useful if it could track, *from the beginning*, the number of Navy users." (emphasis added)); *see also* Dkt. 80 at 4-5 (Navy's infringing use for purposes of the hypothetical negotiation consists of "the number of unauthorized copies made by the government."); *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 359-360 (6th Cir. 2007) (reversing ruling that "there were no actual damages for the copies that were unused and/or inaccessible" and holding that copyright infringer is liable "for the unpaid license fees for all the unauthorized copies it made, regardless of whether these copies were accessible to or used by" the infringing party); *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 779, 787 (9th Cir. 2006) (upholding copyright infringement damages award based on number of unauthorized copies even though "not all of the copies . . . were actually used"); *Gaylord*, 678 F.3d at 1343 (citing *Thoroughbred* approvingly).

### B. Bitmanagement And The Navy Would Have Agreed To A Royalty Rate Of $259 Per Copy

The parties would have agreed to a **final negotiated price of $259 per copy** for each of the 600,000 unrestricted copies of BS Contact Geo made by the Navy. Graff Direct ¶¶ 63-65. Bitmanagement's per-copy royalty rate would be calculated as follows:

1) **The commercial price of an unrestricted PC license for BS Contact Geo was $1,046.**[18] Bitmanagement's and the Navy's starting point in determining the base price would have been the commercial list price of a PC license for Bitmanagement's software. The commercial list price was $1,046 as of 2013.[19]

2) **The Navy paid between $350 and $370 per copy in prior contracts with Bitmanagement**. The Navy would have received a discount from the commercial

---

[18] Stip. ¶¶ 89-90; J027.1; *see* Graff Direct ¶ 43.

[19] J027.1.

6

price of $1,046, based on prior purchases from Bitmanagement where the Navy paid between $350-$370 per copy as set forth below:[20]

    a)     **$425 per copy** in 2010: In 2008, the Navy had paid $300 per copy for those BS Contact licenses.[21] In September 2010, the Navy agreed to upgrade 20 unused PC licenses for BS Contact to BS Contact Geo version 7.215 for $2500, or an additional $125 per license.[22]

    b)     **$305 per copy** in 2015 (BS Contact Geo version 7.215).[23]

    c)     **$350 per copy** in September 2015 (88 "license keys" for BS Contact Geo version 8.001).[24] This was the version that the Navy mass-installed.

    d)     **$370 per copy** in September 2015 (options to purchase another 40 copies per year for two years, of version 8.001, or a total of 80 copies).[25] Thus, the most recent price paid by the Navy for the version of BS Contact Geo that was mass-installed by the Navy was $370 per copy.

3)     **Because of the large number of copies involved, the Navy would have received an additional "volume" discount of 30%.** Since the hypothetical negotiation would be for a large number (600,000 copies), it is reasonable to expect that the parties would have agreed to a volume discount. The best estimate for this discount is 30%, based on a similar large Navy software purchase contract for the software program known as AutoCAD, a program that is used for computer-aided design.[26] Indeed, the Navy itself relied upon its AutoCAD license as a model for prior agreements to license BS Contact Geo.[27]

Therefore, the AutoCAD license provides the most probative basis for determining what volume discount would apply here.[28] In that agreement, based on projected spending of $81 million, the Department of Defense agreed to a discount of approximately 22% for AutoCAD licenses, plus an additional discount of 1% for each million dollars in any single order, up to a maximum additional discount of 10%, for a total maximum compounded discount of

---

[20] Graff Direct ¶¶ 41-48.

[21] J006.4, *see* Graff Direct ¶¶ 23, 42-43.

[22] P090.3; Stip. ¶¶ 46-48.

[23] J016.27; Stip. ¶ 67.

[24] J031.5.

[25] J031.6.

[26] Graff Direct ¶ 54.

[27] *Id.* ¶¶ 52-53; P083.1.

[28] Graff Direct ¶¶ 40, 52-56.

        approximately 30%.[29] Because of the large scale of the Navy's copying, in a hypothetical negotiation, Bitmanagement and the Navy would have agreed to a similar 30% discount from the $370 per copy price for BS Contact Geo 8.001.[30]

4)    **$370 discounted by 30% is $259**, which is more than a 75% total discount off Bitmanagement's retail list price of $1,046 for a BS Contact Geo PC license. $370 represents the price the Navy agreed to pay for additional BS Contact Geo PC licenses in 2015.

5)    **The per-copy price of $259, multiplied by the 600,000 copies the Navy made, equals $155,400,000**.

Based on the analysis above, Bitmanagement is entitled to $155,400,000 in actual damages resulting from the Navy's infringement of its BS Contact Geo 8.001 copyright.[31] Several aspects of this itemization bear emphasis.

First, contrary to the government's contention, Dkt. 139 at 18-19, prior negotiated prices for Bitmanagement's entry-level software *BS Contact* are not relevant to the hypothetical negotiation, because BS Contact is a different product from BS Contact Geo, which is what the Navy mass copied. BS Contact Geo is a more advanced version of Bitmanagement's base-level software, BS Contact, and has special features beyond those in BS Contact.[32] BS Contact Geo has specialized geospatial functionality that BS Contact lacks, which was especially useful to the Navy.[33] BS Contact Geo can also handle large, complex scenes and models that other software cannot.[34] BS Contact Geo can also operate on secure networks, which the Navy required.[35] Mr. Viana testified that BS Contact Geo was "the most efficient 3D rendering [software] available

---

[29] P083.6-79; *see also* Graff Direct ¶¶ 54-55.

[30] Graff Direct ¶¶ 56-58.

[31] *See generally* P083; Graff Direct ¶¶ 63-65.

[32] *See* J027.1; P257 ¶¶ 20-21.

[33] 4/26/19 Tr. (Viana) at 957:11-17; 4/25/19 Tr. (Colleen) at 832:1-18; P257 ¶ 21.

[34] P257 ¶¶ 25, 27-29.

[35] *Id.*

8

commercially."[36]  Government witness Don Brutzman testified that BS Contact Geo was a "very prominent, very excellent tool [and] X3D viewer."[37]  Indeed, in sole-source justification procurement documents accompanying the Navy's 2012 and 2015 contracts for the purchase of BS Contact Geo PC licenses, the Navy determined that BS Contact Geo was the only software that could fulfill its needs, and that Bitmanagement was the "only source" that could provide visualization software to meet the Navy's needs.[38]

Because of its unique features and specialized demand, BS Contact Geo sold for a considerable premium over BS Contact.[39]  In 2013, one PC license of BS Contact Geo retailed for approximately $1,064, while one PC license of BS Contact retailed for approximately $400.[40]  As Mr. Schickel testified on cross-examination at trial, "BS Contact is a much lesser software [than BS Contact Geo] because it . . . does not have geospatial [] functionality, and that's also reflected in the price of BS Contact compared to BS Contact Geo."[41]

Second, the parties would have started the hypothetical negotiations using the price that the Navy agreed to pay for the closest analogue to what the Navy actually copied: the $350-$370 per copy that the Navy agreed to pay to license 88 copies of BS Contact Geo version 8.001 in

---

[36] 4/26/19 Tr. (Viana) at 954:22-955:1.

[37] 4/29/19 Tr. (Brutzman) at 1161:22-1162:10.

[38] *See* J016.70 ("No other similar software is available within the list [of] NMCI tested and certified software."); P184.2-3 ("The BS Contact Geo application is a critical component required to support platform-shore interface design 3D visualization."); *see also* Stip. ¶¶ 28, 32 ("Between 2013 and 2017, BS Contact Geo was necessary for the functioning of SPIDERS 3D because it rendered all three-dimensional geospatial data on the SPIDERS 3D platform.").

[39] *See, e.g.*, J027.1; Graff Direct at 29-30 (App'x B).

[40] J027.1; Graff Direct ¶¶ 42-43; P257 ¶ 30.

[41] 4/22/19 Tr. (Schickel) at 88:5-12, 334:22-24; *see also* P257 ¶ 30 ("[Bitmanagement] offer[s] BS Contact Geo to the public at over twice the price of the standard BS Contact software.").

9

September 2015, and the option to purchase an additional 40 copies per year for two years (for a total of 80 copies).[42] The Navy mass installed BS Contact Geo version 8.001, which is the same version it purchased in September 2015 for $350 and $370 per copy.[43] The government argues that the Court should disregard the Navy's consistent willingness to pay in excess of $300 per copy of BS Contact Geo, but Mr. Viana conceded at trial that the 2012 and 2015 prices were "fair and reasonable."[44]

Third, the Navy would not have sought, nor would Bitmanagement have accepted, a volume discount greater than 70%. Although years before the hypothetical negotiation Bitmanagement considered selling its software at more discounted prices to the Navy,[45] those preliminary discussions and offers (which were not always communicated with the Navy)[46] involved less-advanced software than BS Contact Geo 8.001, *see supra* pp. 8-9, and never resulted in any executed contract or other agreement between the parties.

Fourth, by the time of the hypothetical negotiation in July 2013, the Navy had determined that BS Contact Geo was a "critical component" to the Navy for which there were no viable alternatives.[47] And, as explained above, the sole-source procurement documents accompanying the Navy's 2012 and 2015 contracts for the purchase of BS Contact Geo PC licenses, the Navy stated that BS Contact Geo was the only software that could fulfill its needs and Bitmanagement

---

[42] Graff Direct ¶ 48.

[43] *See* Stip. ¶ 67.

[44] 4/29/19 Tr. (Viana) at 1035:15-20, 1038:3-20.

[45] J001; J002; J009; P257 ¶¶ 53-54.

[46] *Id.*

[47] J016.70; P184.2-3; Stip. ¶¶ 28, 32; 4/26/19 Tr. (Viana) at 953:12-15.

was the "only source" that could provide visualization software to meet the Navy's needs.[48]

Last, only a PC license—and no other license type—would have covered the unrestricted copies of BS Contact Geo that the Navy made, because only a PC license covers the installation of an unrestricted copy of a software program onto an individual computer.[49] In contrast, the other license types the government has asserted would apply, *see* Dkt. 139 at 20-23, 28-29, would not cover the Navy's copying. A domain license (also referred to as a website or IP-range license) would not have covered the Navy's infringing use, because that type of license would only allow BS Contact Geo to view limited content hosted on a specific website, and the pricing for the domain license would have been based on the expected number of users.[50] In contrast, the unrestricted 600,000 copies of BS Contact Geo made by the Navy could view X3D content hosted anywhere (including on external websites, local machines, or the Navy's numerous X3D repositories), which would not have been possible with a domain license.[51]

Similarly, a CD-ROM/DVD license, which only allows for BS Contact Geo to view static content contained on a particular disc, also would not have covered the Navy's infringing use, because the Navy's copies were not limited to viewing content contained on a specific medium or hosted at a particular website.[52]

Nor would an OEM license have covered the Navy's infringing use, since those licenses only allow a licensee—typically a manufacturer—to integrate BS Contact Geo into its own

---

[48] *See supra* p. 9 & n.38.

[49] Dkt. 138 at 23-26; Dkt. 141 at 14-17.

[50] J027; Stip. ¶¶ 25-26; 4/22/19 Tr. (Schickel) at 130:24-131:2, 160:3-13.

[51] Stip. ¶ 15; 4/26/19 Tr. (Chambers) at 892:21-893:6; 4/29/19 Tr. (Brutzman) at 1182:6-1184:3.

[52] 4/22/19 Tr. (Schickel) at 103:1-6, 143:12-21, 144:10-17; P257 ¶ 44.

proprietary hardware or software products, generally for resale to third-party customers.[53]

Finally, a concurrent license also would not have covered the Navy's infringing use, because a concurrent license allows only *a single copy* of a software program to run on a central server that can then be accessed over a network by a set number of simultaneous users (in contrast to the *600,000 copies* the Navy made on each computer).[54]

## II.     Bitmanagement Is Entitled To Pre-Judgment And Post-Judgment Interest

Bitmanagement is entitled to pre-judgment interest on damages awarded for the government's copyright infringement because it is "necessary" to make "compensation complete" for a copyright holder.  *See Gaylord*, 678 F.3d at 1345; *see also The Boeing Co. v. United States*, 86 Fed. Cl. 303, 311 (2009) (awarding prejudgment interest in copyright infringement case against government).  Bitmanagement and the government stipulated that the Court should calculate pre-judgment interest using the 52-week United States Treasury rate compounded annually from July 18, 2013 through the date of entry of judgment.  Stip. ¶ 101; *see also Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-656 (1983).

Bitmanagement is also entitled to post-judgment interest under 28 U.S.C. § 1961(c)(3). This Court has held that a plaintiff in a copyright infringement action against the United States "is entitled to both pre and post-judgment interest as elements of just compensation for the government's unauthorized use of [the plaintiff's] intellectual property." *Davidson v. United States*, 2018 WL 4087269, at *1 (Fed. Cl. Aug. 27, 2018).  The Court should calculate post-judgment interest pursuant to § 1961(a)-(b) by using the Federal Reserve Board's weekly average one-year constant maturity Treasury yield from the calendar week preceding the date of

---

[53] 4/25/19 Tr. (Koerfer) at 603:7-11; D157.

[54] P203.2; 4/26/19 Tr. (Viana) at 963:17-24, 964:5-9; P257 ¶ 51.

entry of judgment then computed daily to the date of payment and compounded annually. *See* 28 U.S.C. § 1961(a)-(b).

## CONCLUSION

As explained above and summarized in the chart attached as Appendix A, the Court should award Bitmanagement actual damages of $155,400,000 plus pre-judgment and post-judgment interest.

Dated: July 2, 2021                    Respectfully submitted,

/s/ *Brent J. Gurney*  
Brent J. Gurney  
*Counsel of Record*  
Wilmer Cutler Pickering Hale and Dorr LLP  
1875 Pennsylvania Ave., N.W.  
Washington, D.C. 20006  
Telephone: (202) 663-6000  
Facsimile: (202) 663-6363  
Email: brent.gurney@wilmerhale.com

*Of Counsel*  
Leon T. Kenworthy  
Jamie Yood  
Michael Carpenter  
Wilmer Cutler Pickering Hale and Dorr LLP  
1875 Pennsylvania Ave., N.W.  
Washington, D.C. 20006  
Telephone: (202) 663-6000  
Facsimile: (202) 663-6363  
Email: leon.kenworthy@wilmerhale.com  
          jamie.yood@wilmerhale.com  
          michael.carpenter@wilmerhale.com

*Counsel for Bitmanagement Software GmbH*