# In the United States Court of Federal Claims

No. 16-840C
(Filed Under Seal: September 7, 2021)
Reissued: September 21, 2021

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BITMANAGEMENT SOFTWARE GMBH,

　　　　　　Plaintiffs,

　　v.

THE UNITED STATES,

　　　　　　Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

　　On February 5, 2021, the U.S. Court of Appeals for the Federal Circuit vacated and remanded this Court's decision in *Bitmanagement Software GMBH v. United States,* 989 F.3d 938 (Fed. Cir. 2021). The majority of the panel agreed with this Court's opinion, *Bitmanagement Software GMBH v. United States*, 144 Fed. Cl. 646 (2019), that there was an implied license between Bitmanagement (hereinafter "Plaintiff") and the Navy regarding the Navy's use of Plaintiff's software. However, the majority found that the use of the Flexera software to monitor the Navy's use of Plaintiff's software was a condition precedent to the implied license; therefore, since the Navy did not deploy Flexera, it had not complied with this condition, with the result that the license was ineffective. Consequently, the Navy's copying of Plaintiff's software was an infringement.[1]

　　This much is straightforward. The majority's instruction to this Court on how to calculate damages, however, is confusing.[2] In footnote 5, the majority states that Plaintiff "is not

---

[1] "Thus, while the Navy had an implied-in-fact license to copy BS Contact Geo onto its computers, the Navy's failure to abide by the Flexera condition of that license renders its copying of the program copyright infringement." *Bitmanagement*, 989 F.3d at 951.

[2] Judge Newman, in her concurrence, criticized the majority for instructing this Court on damages: "The panel majority properly remands for determination of damages, but also offers rulings on the measure of damages, Maj. Op. at 951-52 n.5. Damages and the measure thereof were not reviewed by the Court of Federal Claims, and were not presented on this appeal. The parties have not here briefed nor argued the subject, although it must be determined on remand." *Bitmanagement*, 989 F.3d at 954.

entitled to recover the cost of a seat license for each installation." *Bitmanagement*, 989 F. 3d at 951-52 n.5.  Further on, it states that "the proper measure of damages shall be determined by the Navy's actual *usage* of BS Contact Geo in excess of the limited *usage* contemplated by the parties' implied license." *Bitmanagement*, 989 F. 3d at 952 (emphasis added).  What does the majority mean by "usage"? How does this instruction fit with the determination that the Navy is liable for copyright infringement because of its *copying* of Plaintiff's software?

**I.      Copying**

One possibility is that the majority equates usage with the making of copies.  If so, then the base for calculating damages would be the number of unauthorized copies made by the Navy. Yet, the equating of usage and copies seems to contradict the majority's statement that Plaintiff "is not entitled to recover the cost of a seat license for each installation." *Bitmanagement*, 989 F.3d at 951-52 n.5.  The majority may mean that Plaintiff cannot simply recover the cost of a seat license as indicated in the purchase orders, but rather must argue for what it would receive under a hypothetical negotiation as compensation for the number of copies made by the Navy. But it may also be that the majority had in mind the floating license contemplated by the 2012 implied license.[3]

**II.     Use**

Another possibility is that the base for calculating damages is the number of times that the software was actually used instead of the number of copies. This alternative is consistent with not using the cost of a seat license.  It is also consistent with the majority's observation that Plaintiff was looking to compensation based on the usage of the software rather than charging for each copy.  Indeed, monitoring the use of the software was the task of Flexera, which the Navy failed to deploy.[4]

**III.    Copyright Infringement**

Unlike the Patent Act, the Copyright Act does not provide a right to "use" the copyrighted work.  In this case, the relevant right is the right to reproduce in copies.  The copyright owner may authorize another to exercise the owner's copyright rights, by license, for

---

[3] "*This will allow us to track the use of the 20 licenses across a broad spectrum of the NMCI realm (versus having those 20 licenses mapped to individual PCs)."* Viana, deputy program manager for the Navy, email to Alex Koerfer, Financial Officer of Bitmanagement, November 24, 2011, *Bitmanagement*, 989 F.3d at 944 (emphasis in original).

[4] "This is one of those rare circumstances where the record as a whole reflects that the *only* feasible explanation for Bitmanagement allowing mass copying of its software, free of charge, was the use of Flexera at the time of copying." *Bitmanagement*, 898 F.3d at 950. Similarly, this Court observed: "The more logical explanation is that Bitmanagement agreed to this licensing scheme because Flexera would limit the number of simultaneous users of BS Contact Geo, regardless of how many copies were installed on Navy computers." *Bitmanagement,* 144 Fed. Cl. at 658.

example. Thus, in this case, Plaintiff impliedly agreed not to limit the number of copies that the Navy could make and instead conditioned this permission on the use of the software monitored by Flexera. Since the use of Flexera was a condition precedent to the license (as the majority found), the failure of the Navy to deploy Flexera, vitiated the license. Therefore, the Navy did not have permission to make any copies of Plaintiff's software, except for the few copies covered by express agreements. This reasoning leads to the conclusion that the base for damages in this case is the price that the parties would have agreed to in a hypothetical negotiation for the number of unauthorized copies that the Navy made. However, as the majority cautions, the starting point cannot be the cost of a seat license for each copy. *See Bitmanagement,* 989 F.3d at 951-52 n.5. The cost of the seat licenses in the express agreements needs to be reduced by relevant factors, including, for example, volume discounts. This Court, then, adopts the first possible interpretation of the majority's instructions on damages.

### IV. Burden

The Federal Circuit held that "[a]s the party who breached the Flexera requirement in the implied license, the Navy bears the burden of proving its actual usage of the BS Contact Geo software and the extent to which any of it fell within the bounds of any existing license." *Bitmanagement*, 989 F.3d at 951-52 n.5. In its brief, the Navy takes issue with this statement, arguing that damages were not part of Plaintiff's appeal; therefore, "the panel majority's views on damages in this case are not controlling." ECF No. 148 at 3. Although it is true that damages were not on appeal, the Federal Circuit's statement is clear, and it is not this Court's role to excise this particular sentence from the opinion. Indeed, later in the same paragraph the Navy softened its view: "At most, the panel majority observed that the Government bore the burden of proving the contours of its licensing affirmative defense." ECF no. 148 at 4. This Court interprets the Federal Circuit's statement as laying the burden on the Navy to prove the number of unauthorized copies it made and to exonerate its acts by pointing to a license that authorized it to do so.

### V. Measure of Damages

The measure of damages for infringement of "the right to reproduce in copies," 17 U.S.C. § 101 *et seq*., begins with the determination of how many unauthorized copies the infringer made.[5] Ordinarily, the next step would be to calculate the damages suffered by the copyright holder. However, in the context of 25 U.S.C. §1498(b), as the Federal Circuit states, the determination of damages "should take the form of a hypothetical negotiation." *Bitmanagement*, 989 F.3d at 951-52 n.5. In the copyright context, the relevant factors to be considered are laid out in the *Gaylord* cases. *See Gaylord v. United States*, 678 F.3d 1339 (Fed. Cir. 2012); *Gaylord v. United States*, 112 Fed. Cl. 539 (2013), *aff'd* 777 F.3d 1363 (Fed. Cir. 2015).

In addition, the parties must take into consideration the distinction that the Federal Circuit drew between the EXE file and the web plug-in file (OCX). The Federal Circuit found that the

---

[5] "We do not disturb the Claims Court's uncontested finding that at least 38 copies of BS Contact Geo 8.001 were authorized based on 38 remaining licenses from the 2012 Navy Purchase Order." *Bitmanagement*, 989 F. 3d at 951 n.4.

OCX file "was at no point properly monitored by Flexera" and that "[t]he extent to which the EXE version was monitored by Flexera appears to be disputed." *Bitmanagment*, 989 F.3d at 951-52.  In other words, no copies of the OCX file were authorized under the license because the use of Flexera was a condition precedent to the application of the license.  The parties may, however, argue about the number of copies of the EXE file that were protected by Flexera (and thus authorized) and the number of copies not protected by Flexera, which copies are infringing according to the Federal Circuit.

## VI. Conclusion

As indicated above, the Federal Circuit remanded the case for a determination of damages taking the form of a hypothetical negotiation.  It is clear that the Federal Circuit looked to the *Gaylord* line of cases as a guide; therefore, the relevant factors to take into consideration should mirror the factors articulated in the *Gaylord* line of cases.  Thus, the parties are instructed to file a brief, **not to exceed 10 pages,** using the guidance below.

1. The government bears the burden to prove the number of unauthorized copies it made and to exonerate its acts by pointing to a license that authorized it to do so.

2. All copies of the OCX files were not authorized and are to be counted for damages.

3. The parties may argue about the number of copies of the EXE file that were protected by Flexera (and thus authorized) and the number of copies not protected by Flexera.

4. Using the *Gaylord* factors, the parties may support their positions of fair market value by presenting evidence of  (1)  past arms-length licensing practices by the copy owner or infringer for similar uses,  (2) "benchmark" licenses by others in the industry,  (3)  unique features of the software,  (4) whether different licensing fees would have been appropriate for different categories of usage, and/or (5) whether a lump sum payment would have been the outcome of the hypothetical negotiation.

The parties shall file simultaneous briefs **no later than Friday, October 1, 2021.**

The parties shall also file any redactions to this opinion within 7 days from the date of this opinion and order.[6]

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH

---

[6] No redactions were forthcoming from the parties.

Senior Judge