**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BITMANAGEMENT SOFTWARE GMBH, | Case No. 16-840 C |
| Plaintiff, | Senior Judge Edward J. Damich |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 8, 2022 ORDER SETTING A NEW DAMAGES TRIAL AND REQUEST FOR STAY OF ALL PRETRIAL AND TRIAL DEADLINES**</u>

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.     Proceedings Before the 2019 Trial ........................................................................ 2

II.    The April 2019 Trial on Liability and Damages .................................................. 4

III.   The Court's September 2019 Opinion .................................................................. 6

IV.   The Federal Circuit's February 2021 Decision and Remand ............................... 7

V.    The Court's Post-Remand Supplemental Damages Briefing ................................ 7

       A.    Bitmanagement's Motion for Entry of Judgment .................................... 8

       B.    The First Round of Court-Ordered Supplemental Damages Briefing ................... 9

       C.    The Second Round of Court-Ordered Supplemental Damages Briefing ............. 11

       D.    The Third Round of Court-Ordered Supplemental Damages Briefing ................ 12

       E.    The Court's *Sua Sponte* Order for a New Damages Trial ................................... 14

ARGUMENT .................................................................................................................. 14

I.     There Is No Basis For A Duplicative And Wasteful Trial, Where All Evidence Was Previously Received And No Party Suggested The Record Is Incomplete ............. 14

II.    A Retrial Would Be Unduly Burdensome For Both Parties, And Especially For Bitmanagement, A Small Company With Limited Resources ......................................... 16

III.   A Retrial Would Violate The Mandate Rule ...................................................... 18

IV.   The Court Should Stay All Pretrial And Trial Deadlines Pending Disposition Of This Motion .......................................................................................................................... 21

CONCLUSION ................................................................................................................ 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akal Security, Inc. v. United States*,
    87 Fed. Cl. 311 (2009) ...............................................................................21

*Bitmanagement v. United States*,
    144 Fed. Cl. 646 (2019) ....................................................................... *passim*

*Bitmanagement v. United States*,
    2021 WL 4272874 (Fed. Cl. Sept. 7, 2021) (reissued Sept. 21, 2021)...................................11

*Bitmanagement v. United States*,
    989 F.3d 938 (Fed. Cir. 2021)............................................................... *passim*

*Charles v. Daley*,
    799 F.2d 343 (7th Cir. 1986) ...................................................................14

*Crowe v. Stewart Machine and Engineering Co.*,
    1994 WL 516612 (E.D. La. Sept. 15, 1994), *aff'd*, 78 F.3d 582 (5th Cir. 1996) ..............20, 21

*Gaylord v. United States*,
    678 F.3d 1339 (Fed. Cir. 2012)................................................................12

*Gaylord v. United States*,
    777 F.3d 1363 (Fed. Cir. 2015)..................................................................7

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...........................................................19, 20

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197 (4th Cir. 2019) .....................................................21

*Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996)................................................................20

*Omega Patents, LLC v. CalAmp Corp.*,
    920 F.3d 1337 (Fed. Cir. 2019)..........................................................19, 20

*Omega Patents, LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) ...............................................................18

*Reichenpfader v. Paccar, Inc.*,
    872 F. Supp. 328 (E.D. La. 1994) ...........................................................16

*South Atlantic Limited Partnership of Tennessee, LP v. Riese*,
    356 F.3d 576 (4th Cir. 2004) ...................................................................18

*United States v. Barnett*,
    34 F. App'x 150 (5th Cir. 2002) .......................................................17, 18

*United States v. Bell*,
    5 F.3d 64 (4th Cir. 1993) ...............................................................18, 19

**Statutes, Rules, Regulations**

Fed. R. Evid. 702 ..............................................................................................4

**Other Authorities**

*Calculation*, Cambridge Dictionary,
    https://dictionary.cambridge.org/us/dictionary/english/calculation......................19

*Determination*, Black's Law Dictionary (11th ed. 2019) ............................................19

6A Moore et al., Moore's Federal Practice ¶ 59.08[2] (2d ed. 1989)............................16

Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2804 (3d ed.) ......................................15

## INTRODUCTION

In the thirteen months since the Federal Circuit reversed the Court's ruling on liability and instructed the Court to engage in a "calculation of damages," the parties have briefed the issue four times—three of them in response to the Court's orders.  As both parties' briefs have repeatedly explained, the bench trial this Court held in April 2019 gave each side a full and fair opportunity to submit and probe the evidence concerning damages.  The record is complete, and contains all the information necessary for the Court to make the damages calculation the Federal Circuit ordered.  There is no suggestion of new evidence that relates to damages, or that any prior evidence was erroneously admitted.  Neither party has requested a new trial.

The Court's *sua sponte* ordering of a retrial—scheduled to begin October 11, 2022—is entirely unnecessary.  Any exhibits submitted, and any testimony taken, will be wholly duplicative of prior testimony.  A retrial will force the parties to expend significant resources to merely reenact the events of April 2019.  The Court's decision amounts to legal error and an abuse of discretion, for three reasons.

*First*, the Court points to no manifest error of law or mistake of fact related to damages evidence received at the prior trial that would justify a new trial.  Indeed, its order scheduling a new trial identifies no substantive reason to hold one, nor does it identify any authority that justifies subjecting the parties to a second trial in such circumstances.

*Second*, a second trial on issues that have already been fully tried once would impose severe undue burdens on the parties, particularly Bitmanagement, which is a small company with limited resources.  The Court has identified no benefit that justifies those burdens.

*Third*, a new trial would violate the mandate rule, because the Federal Circuit's remand instructions envisioned that the Court would "calculate" and "determine" damages—words that

1

do not contemplate a new trial that neither party requested.  When the Federal Circuit intends for a trial court told hold a new trial on remand, it says so expressly.

Bitmanagement respectfully submits that the Court should reconsider its order scheduling a new trial.  The Court should instead calculate damages and enter a final judgment on the existing evidentiary record.  Bitmanagement also moves that the Court stay all pretrial and trial deadlines pending its resolution of this motion.

The Government has notified Bitmanagement that it intends to file a short response addressing Bitmanagement's motion for reconsideration by Friday, March 25, 2022.  The response will request that the Court rule on the Government's stayed motion for reconsideration of the exclusion of the trial testimony of its damages expert.  Other than reconsideration of that exclusion to potentially allow the expert's trial testimony, the Government agrees with Bitmanagement that both parties previously presented their respective cases on damages at trial, and that the trial record should otherwise remain closed.

## BACKGROUND

### I.    Proceedings Before the 2019 Trial

On July 15, 2016, Bitmanagement—a German software company specializing in three-dimensional rendering applications—sued the United States (the "Government") for copyright infringement of its BS Contact Geo three-dimensional rendering software.  Dkt. 1 (Compl.); *Bitmanagement v. United States*, 989 F.3d 938, 945 (Fed. Cir. 2021) ("*Bitmanagement II*").  Bitmanagement's claim arose from the fact that, beginning in 2013, the United States Navy made hundreds of thousands of unauthorized, unrestricted copies of BS Contact Geo version 8.001 to support its enterprise-wide virtual reality SPIDERS 3D platform.  *Id*. at 941, 950-52; *Bitmanagement v. United States*, 144 Fed. Cl. 646, 647 (2019) ("*Bitmanagement I*").  The Navy relied upon BS Contact Geo—a high-performance three-dimensional rendering application—to

provide three-dimensional visualizations in SPIDERS 3D; without BS Contact Geo, SPIDERS 3D would have been worthless.  Dkt. 138 at 20-21.  Bitmanagement sought actual damages for the Navy's mass infringement.  Dkt. 1.

The parties spent well over a year in discovery.  Following the close of discovery on May 18, 2018, Bitmanagement moved for partial summary judgment on liability, which the Court denied on the ground that "there exists disputed questions of fact."  *Bitmanagement I*, 144 Fed. Cl. at 647; Dkt. 37.  The parties then began preparing for trial on all issues in the case, including liability and damages.  Dkt. 139 at 2.

The Court entered a pre-trial scheduling order on August 23, 2018 that imposed extensive pre-trial obligations on the parties designed to preview the issues and evidence to be presented at trial.  Dkt. 40.  The parties indicated throughout their pre-trial submissions that they understood the trial would be their opportunity to present evidence on both liability and damages.  For instance, from September through November 2019, the parties provided the Court (but did not file on the docket) preliminary findings of fact, conclusions of law, and witness lists that covered both liability and damages issues.  In March 2019—shortly before trial—the parties also filed pre-trial briefing, proposed findings of fact, exhibit lists, and witness lists that addressed both liability and damages.  *See* Dkt. 60; Dkt. 74; Dkt. 75; Dkt. 76; Dkt. 78.  These pre-trial submissions covered numerous topics related to damages.

Both parties included their respective damages experts on their witness lists.  Dkt. 74-1; Dkt. 60-1.  The two experts employed different approaches to calculating damages owed to Bitmanagement:  Bitmanagement's expert calculated damages based on the total number of infringing copies of BS Contact Geo made by the Navy, Dkt. 54 at 23 & n.6; Dkt. 54-1, and the Government's expert calculated damages based on the number of copies of BS Contact Geo

actually used by the Navy—a subset of the total number of infringing copies made by the Navy, Dkt. 53 at 6; Dkt. 53-2.

Before trial, both parties moved *in limine* to exclude each other's damages expert from testifying at trial.  Bitmanagement argued that the Government's expert's opinions were unreliable under Federal Rule of Evidence 702 because he applied the incorrect legal standard by calculating damages based on the number of copies of BS Contact Geo the Navy actually used, rather than the total number of infringing copies of BS Contact Geo the Navy actually made. Dkt. 53 at 6-9.  The Government argued that Bitmanagement's expert was not qualified, would not offer helpful testimony to the Court, and offered legal conclusions.  Dkt. 54 at 6-25.

The Court excluded the Government's expert's testimony as "unreliable because his calculations were based on an incorrect legal standard."  Dkt. 80 at 5.  In particular, the Court found that the Government's expert based his damages calculation on the number of copies of BS Contact Geo "actually used" by the Navy—i.e., only those copies that were actually launched by a user—as opposed to the total number of infringing copies of BS Contact Geo the Navy made.  Dkt. 80 at 4-5.  The Court explained:

> The infringement referred to in the submissions regarding this motion **is copying**. Therefore, the starting point for the damages calculation is the damage caused to the copyright owner by the government in making the unauthorized copies. Therefore, the number of unauthorized copies must be determined. Once this figure has been determined, then the inquiry becomes what is "the fair market value of a license covering the defendant's use"—***the use in this case being the number of unauthorized copies made by the government***.

Dkt. 80 at 4-5 (quoting *Gaylord v. U.S.*, 678 F.3d 1339, 1343 (Fed. Cir. 2012) (emphasis added)).  The Court declined to exclude Bitmanagement's expert from testifying.  Dkt. 81.

## II.     The April 2019 Trial on Liability and Damages

The Court held a six-day bench trial on liability and damages from April 22-29, 2019. *Bitmanagement II*, 989 F.3d at 945.  As the Government has explained, the trial covered "all

4

issues in the case" and, "to the extent that the Court's prior findings did not reach the relevant facts for damages, the parties had full and fair opportunity to present their respective assertions," Dkt. 139 at 2, and "a full and fair opportunity to present their proposed findings of fact on damages," *id.* at 5; *see also id.* at 10; Dkt. 141 at 2-3.  Indeed, the Government told the Court less than a year ago—after the Federal Circuit instructed the Court to calculate damages owed to Bitmanagement—that "no further assertions [on damages] should be permitted" given that the Court already held a trial covering damages.  Dkt. 139 at 2.

At trial, the Court heard testimony from nine witnesses, with nearly every witness offering testimony bearing on the damages theories presented by the parties.  *Bitmanagement I*, 144 Fed. Cl. at 648.  In particular, the Court heard testimony—including extensive cross-examination testimony—from Peter Schickel (Bitmanagement's CEO), Axel Koerfer (Bitmanagement's CFO), David Colleen (head of Bitmanagement's reseller, Planet 9 Studios), Alex Viana (the Navy program manager who negotiated BS Contact Geo licenses), Don Brutzman (a Navy-affiliated academic focused on 3D-rendering software), and George Graff (Bitmanagement's damages expert).  *Id*.  Because the Court excluded the Government's damages expert, the testimony of Mr. Graff—Bitmanagement's damages expert—was unrebutted. Testimony at trial spanned the following topics that the parties argue are related to damages:

- Software licensing practices in general;
- Bitmanagement's software licensing practices;
- the Navy's software licensing practices;
- Bitmanagement's pricing for BS Contact Geo;
- Bitmanagement's past licenses and negotiations with the Navy;
- the Navy's past licenses and negotiations for comparable software;
- Bitmanagement's past licenses and negotiations with non-Navy entities;
- Bitmanagement's marketing materials;
- Bitmanagement's financial resources;
- the value of BS Contact Geo to the Navy; and
- the advantages of BS Contact Geo over competitor software.

The parties also moved more than 170 exhibits into evidence during trial.  Dkt. 114.  Many of those exhibits relate to the topics listed above and bear on the different damages theories presented by the parties.  *Id.*

The Court made clear throughout trial that it was carefully focused on issues and evidence related to damages.  *See* Tr. 11:20-15, 40:3-25, 328:8-17, 857:10-25, 872:2-14.  Until this month, the Court never suggest before, during, or after trial that the evidence presented on damages was inadequate for the Court to make findings of fact and conclusions of law related to damages.

After trial, the parties submitted substantial post-trial briefing based on the trial record that addressed both liability and damages.  Dkt. 116; Dkt. 121; Dkt. 126.  Bitmanagement devoted fifteen pages to damages in its opening post-trial brief, Dkt. 116 at 31-45, and devoted half of its reply brief to damages, Dkt. 126 at 7-15.  The Government likewise devoted more than ten pages to damages in its post-trial brief.  Dkt. 121 at 33-45.  Both parties relied extensively on evidence adduced at trial in supporting their damages positions in the post-trial briefing.  *See* Dkt. 116; Dkt. 121; Dkt. 126.  Neither of the parties suggested in post-trial briefing that it had been given an unfair or inadequate opportunity to present damages evidence during trial.  *See id.*

## III.   The Court's September 2019 Opinion

On September 9, 2019, the Court ruled that the Navy was not liable for copyright infringement because Bitmanagement had authorized the Navy's extensive copying of BS Contact Geo.  *Bitmanagement I*, 144 Fed. Cl. at 659.  Because the Court found for the Government on liability, the Court did not reach damages and did not enter any findings of fact or conclusions of law directly related to damages.  *Id.*  Nevertheless, the Court referenced trial evidence related to damages throughout its opinion, including evidence regarding

Bitmanagement's licensing history with the Navy, as well as Bitmanagement's licensing practices. *Id.* at 648-651. Bitmanagement appealed the Court's ruling.

## IV.     The Federal Circuit's February 2021 Decision and Remand

On February 25, 2021, the Federal Circuit vacated the Court's decision, concluding that the Government was liable for copyright infringement of BS Contact Geo, and remanded. *Bitmanagement II*, 989 F.3d at 951. Specifically, the Federal Circuit held that, although Bitmanagement granted an implied license to the Navy to copy BS Contact Geo, the Navy infringed Bitmanagement's copyright by failing to comply with an express condition of its implied license, and therefore every copy of BS Contact Geo that the Navy made constituted copyright infringement. *Id.* ("The Navy's failure to comply with the Flexera condition of the license renders the Navy's copying outside the scope of that license. Such unauthorized copying is copyright infringement."). The Federal Circuit noted that this Court should determine actual damages for Bitmanagement through a hypothetical negotiation as set forth in *Gaylord v. United States*, 777 F.3d 1363, 1368-372 (Fed. Cir. 2015). The Federal Circuit instructed the Court to make a "calculation of damages," *Bitmanagement II*, 989 F.3d at 941 (or a "determination of damages," *id.* at 951) on remand, and did not suggest that the Court needed to hold a new trial to make such a calculation. On April 19, 2021, the Federal Circuit issued its mandate. Dkt. 135.

## V.      The Court's Post-Remand Supplemental Damages Briefing

Since issuance of the Federal Circuit's mandate, the parties have engaged in four rounds of supplemental briefing on damages before this Court. In three of those rounds, the Court ordered the parties to address specific issues to assist the Court in determining damages. In none of those filings has either party requested a new trial.

A.      **Bitmanagement's Motion for Entry of Judgment**

On April 20, 2021—the day after the Federal Circuit's mandate issued directing this Court to make a "determination of damages"—Bitmanagement filed a motion for entry of judgment under RCFC 58.  Dkt. 138.  Consistent with its position during the 2019 trial, Bitmanagement sought a judgment of $155,400,000 in damages, plus interest.  *Id.* at 1-3. Bitmanagement argued that the Navy made 600,000 infringing copies of BS Contact Geo, that Bitmanagement was entitled to a license that would cover all 600,000 infringing copies, and that, in a hypothetical negotiation, the Navy would have purchased 600,000 BS Contact Geo licenses for a discounted price of $259 each.  *Id.* at 15-25.  Bitmanagement supported its motion with evidence from trial.  *See generally id.*

The Government opposed Bitmanagement's motion and cross-moved for reconsideration of the Court's order excluding the testimony of its damages expert, arguing again that the Court should consider "actual usage" of BS Contact Geo—i.e., the number of copies of BS Contact Geo opened and accessed—when determining damages for the Navy's infringement.  Dkt. 139 at 32-36.  The Government asserted that Bitmanagement and the Navy would have agreed in a hypothetical negotiation to a website license or mixed license that covered the Navy's "actual use" of BS Contact Geo, which would result in a "low six-figure total royalty."  *Id.* at 26-31. The Government asserted that testimony from its excluded damages expert—who "focused on the Navy's actual use" of BS Contact Geo—was therefore relevant.  *Id.* at 32-36.  The Government did not request a new trial and stated that the first trial provided a "full and fair opportunity" for both sides to present their damages arguments.  *Id.* at 2, 5, 10.  The Government supported its brief with evidence from trial.  Dkt. 139.

The Court declined to rule on Bitmanagement's motion for entry of judgment and the Government's cross-motion for reconsideration.  Dkt. 143 at 1.  The Court instead stayed the

motions—which are still pending[1]—and *sua sponte* "order[ed] further briefing on each party's damages calculation." *Id.* This marked the beginning of three rounds of Court-ordered supplemental briefing concerning damages.

**B.      The First Round of Court-Ordered Supplemental Damages Briefing**

On May 24, 2021, after Bitmanagement filed its motion for entry of judgment, the Court directed the parties to submit supplemental briefs "itemiz[ing] the damages as well as provid[ing] the Court with supporting justification." Dkt. 143 at 1. Bitmanagement's first supplemental brief again argued that the Navy made 600,000 infringing copies of BS Contact Geo for which the Navy would have purchased 600,000 PC licenses at $259 per license in a hypothetical negotiation, resulting in total damages of $155,400,000 plus interest. Dkt. 146 at 1-13; Dkt. 150. Bitmanagement provided the Court with the following damages itemization:

---

[1] Although the Court has not ruled on the Government's cross-motion for reconsideration, that cross-motion is undermined by the Court's reiteration in September 2021 that Bitmanagement's damages must be based on the number of infringing copies of BS Contact Geo the Navy made, not on the Navy's actual usage of BS Contact Geo. Dkt. 153 at 2-4.

## Royalty Base Calculation

| | |
|---|---|
| July 2013 NMCI Installations | 558,466 computers [1] |
| 2013-16 NMCI Installations | ~40,000 computers [2] |
| ONE-Net Installations | ~28,000 computers [3] |
| Non-Navy Copies | Unknown [4] |
| **Royalty Base** | **600,000+ Copies [5]** |

## Royalty Rate Calculation

| | |
|---|---|
| Retail Price for One PC License | $1,046 [6] |
| Prior Negotiated Price (2015) | $ 370 [7] |
| Volume Discount of 30% | x .70 |
| **Royalty Rate** | **$ 259 per copy [8]** |

## Bitmanagement's Damages

| | |
|---|---|
| **600,000** Copies | |
| x $ **259** per copy | |
| ***$155,400,000*** | |

Dkt. 146 at App'x A.

The Government's first supplemental brief argued that, even though the Navy made hundreds of thousands of infringing copies of BS Contact Geo, the parties would have agreed in a hypothetical negotiation to a website license or mixed license that covered only the Navy's "actual use" of BS Contact Geo—which it argued amounts to 650 unique users—for total damages between $200,000 and $235,000, plus interest. Dkt. 148 at 1. The Government provided the Court with the following damages itemization:

|  | Alternative 1: Compensation based on a Website License | Alternative 2: Compensation based on a Mixed License |
|---|---|---|
| **Hypothetical Negotiation Date** See *infra* Section II.A. | July 18, 2013 | |
| **Negotiating Parties** See *infra* Section II.B. | Bitmanagement and the Navy | |
| **Objective Factors** See *infra* Section II.C. | Navy has stronger bargaining position | |
| **Royalty Base** See *infra* Section III. | 429,604 copies, for 650 unique users, requiring 100 additional simultaneous-use licenses | |
| **License Type** See *infra* Section IV. | Website License | Mixed License |
| **Royalty Rate** See *infra* Section V. | $200,000 (for 1 website license) | $200,000 (for 1 website license) + $35,000 (for 100 additional simultaneous-use licenses) |
| **Base Compensation** See *infra* Section V. | $200,000 | $235,000 |
| **Delay Compensation** See *infra* Section VI. | 52-week Treasury rate compounded annually from July 18, 2013 to payment of judgment | |
| **Reasonable and Entire Compensation** | $200,000 + Delay Compensation | $235,000 + Delay Compensation |

Dkt. 148 at 1. Bitmanagement then filed a reply brief addressing the Government's contentions. Dkt. 150. The parties supported their briefs with evidence from the trial record. *See* Dkt. 146; Dkt. 148; Dkt. 150.

## C.     The Second Round of Court-Ordered Supplemental Damages Briefing

On September 7, 2021, the Court issued an interim order regarding the appropriate measure of damages and ordered a second round of supplemental damages briefing. Dkt. 153; *Bitmanagement v. United States*, 2021 WL 4272874, at *1-3 (Fed. Cl. Sept. 7, 2021) (reissued Sept. 21, 2021) ("*Bitmanagement III*"). Consistent with its pre-trial ruling excluding the Government's damages expert—who based his opinions on the Navy's actual use of BS Contact Geo, rather than the number of infringing copies made by the Navy—the Court ruled that "the base for damages in this case is the price that the parties would have agreed to in a hypothetical negotiation for the *number of unauthorized copies* that the Navy made." Dkt. 153 at 2-3

11

(emphasis added).  As it did before trial, the Court again rejected the Government's theory that damages should be based on the number of copies of BS Contact Geo "actually used" by the Navy, concluding instead that "[a]ll copies of the [BS Contact Geo] OCX files were not authorized and are to be counted for damages."  *Id.* at 3-4.

The Court then instructed the parties to submit a second round of supplemental damages briefs, this time asking the parties to support their proposed price-per-infringing-copy using the factors laid out in *Gaylord v. United States,* 678 F.3d 1339 (Fed. Cir. 2012), such as evidence relating to:  "(1) past arms-length licensing practices by the copy[right] owner or infringer for similar uses, (2) 'benchmark' licenses by others in the industry, (3) unique features of the software, (4) whether different licensing fees would have been appropriate for different categories of usage, and/or (5) whether a lump sum payment would have been the outcome of the hypothetical negotiation."  Dkt. 153 at 4.

The parties submitted their second supplemental damages briefs on October 1, 2021. Dkt. 154; Dkt. 158 (corrected version of Dkt. 154); Dkt. 155.  Bitmanagement again explained that, in a hypothetical negotiation, the parties would have agreed to 600,000 BS Contact Geo PC licenses at $259 per license for total damages of $155,400,000, plus interest.  Dkt. 158 at 1-10. The Government again argued that, even though the Navy made hundreds of thousands of infringing copies of BS Contact Geo, the parties would have agreed in a hypothetical negotiation to a website or mixed license covering only the 650 copies of BS Contact Geo that the Government contended that the Navy actually used.  Dkt. 155 at 6-10.  The parties supported their briefing with evidence from the trial record.  *See* Dkt. 158; Dkt. 155.

**D.**    **The Third Round of Court-Ordered Supplemental Damages Briefing**

On November 19, 2021, the Court issued another interim order on damages and requested a third round of supplemental damages briefing to help "clarify the positions of the parties."

Dkt. 160.  In the order, the Court criticized the Government's second supplemental brief for again basing damages "on the 'actual use' of BS Contact Geo by the Navy … [which] is contrary to the Court's [September 7, 2021] Opinion and Order … [and] contrary to the concept of a hypothetical negotiation which would have taken place *before* the infringement." *Id.* at 1.  The Court explained that Bitmanagement's second supplemental brief took a "more practical approach" in organizing its damages arguments.  *Id.* at 2.  To give the Court "a clear and complete picture of the positions of each party," the Court instructed the parties to file a third round of supplemental briefs addressing:  (1) the date of the first infringement; (2) the number of copies of BS Contact Geo made by the Navy; (3) the price-per-copy that the parties would have arrived at in a pre-infringement hypothetical negotiation; and (4) the total amount of damages for which the Government is liable.  *Id.*

The parties submitted their third supplemental damages briefs on December 20, 2021. Dkt. 163; Dkt. 162.  Bitmanagement again showed that the Navy made 600,000 infringing copies and the parties would have agreed to a price-per-copy of $259 in a hypothetical negotiation for total damages of $155,400,000 plus interest.  Dkt. 163 at 1.  The Government again argued that the parties would have negotiated a hypothetical license based on the Navy's projected actual usage—rather than the number of infringing copies made by the Navy—leading to total damages between $200,000 and $235,000, plus interest.[2]  Dkt. 162 at 5-13.  The parties supported their briefing with evidence from the trial record.  *See* Dkt. 163; Dkt. 162.

---

[2] The Government alternatively suggested that if the Court awarded damages based on a price-per-copy for every infringing copy, the appropriate price should be $2 per infringing copy. Dkt. 162 at 13-14.

E.      **The Court's *Sua Sponte* Order for a New Damages Trial**

On March 8, 2022, without notice to the parties that the Court was contemplating such an action, the Court issued an order stating that "questions of fact remain and a trial is necessary on the issue of damages." Dkt. 166 at 1. The Court scheduled a second damages trial—with 10 hours allotted per side—beginning on October 11, 2022. *Id.* at 1. At no point in the post-remand damages briefing did either party request a new damages trial. To the contrary, the parties had informed the Court that the first trial provided a "full and fair opportunity" to present evidence on damages and that "no further assertions" related to damages should be permitted. Dkt. 139 at 2; *see also id.* at 5, 10; Dkt. 141 at 2-3.

As scheduled, this second damages trial will take place more than eight years after the Navy first infringed Bitmanagement's software, Dkt. 163 at 2; more than six years after Bitmanagement sued the Navy for its copyright infringement, Dkt. 1; more than three-and-a-half years after this Court held its first trial on damages, *Bitmanagement II*, 989 F.3d at 945; and nearly one-and-a-half years after the Federal Circuit directed this Court to make a "determination of damages" for the Navy's infringement, *id.* at 951.

## ARGUMENT

I.      **There Is No Basis For A Duplicative And Wasteful Trial, Where All Evidence Was Previously Received And No Party Suggested The Record Is Incomplete**

A motion for reconsideration allows the court "to correct its own errors, sparing parties and appellate courts the burden of unnecessary proceedings." *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986). The Court's order scheduling a new trial is an error the Court should correct. This case has already been fully tried once, and the relevant damages issues have been briefed four times. In that briefing, the parties' positions concerning the amount of damages and how damages should be calculated have not changed. No party has suggested that a new trial is

necessary or warranted.  The Court's *sua sponte* order directing a new trial on damages does not identify any evidence that it believes was missing from the first trial, nor does it suggest that both parties lacked a full opportunity to present all admissible damages evidence in the first trial. Over the course of the six-day bench trial from April 22-29, 2019, the Court heard testimony from nine witnesses, most of whom offered testimony bearing on the damages theories presented by the parties.  The parties moved more than 170 exhibits into evidence during trial, most of which also related to the damages theories presented by the parties.  Dkt. 114.  The parties submitted substantial post-trial briefing on damages based on the trial record, and neither party has at any point in the several years of litigating this case suggested that it lacked the opportunity to enter into the record evidence on damages.  Dkt. 116; Dkt. 121; Dkt. 126.

The Court's brief, non-substantive order recites only one reason for setting a new trial on damages that were already fully litigated in the first trial: a "determin[ation]" that unspecified "questions of fact remain."  Besides not identifying what "questions of fact remain," the order does not specify any remaining "questions of fact" that cannot be resolved based on the trial record and the parties' four sets of post-remand briefs.  The Court certainly did not identify any manifest error of law or mistake of fact in the first trial that requires redoing the entire trial now. *Cf.* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2804 (3d ed.) ("A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact[.]").

There is no basis for a new trial now.  At no point in the earlier trial did the Court suggest it was only considering the issue of liability and would subsequently hold a separate trial on damages.  Indeed, had the Court originally held the United States liable, it would have simply proceeded to determine damages based on the existing record.  The Government has not

15

suggested at any point in the past three years that a new trial would help its case on damages, but even if it had, "a trial court should not grant a new trial merely because the losing party can probably present a better case on another trial." 6A Moore et al., Moore's Federal Practice ¶ 59.08[2], at 59–97 (2d ed. 1989). Courts have declined to hold a new trial on damages where there was already a sufficient record on the issue, even where a party has actually asked for a new trial. *See, e.g.*, *Reichenpfader v. Paccar, Inc.*, 872 F. Supp. 328, 330 (E.D. La. 1994) (declining to order a new trial on damages because sufficient information was already in the record concerning medical expenses). Here, where no party has actually sought a new trial and both parties agree that there is a sufficient record on damages, a new trial would be duplicative, wasteful, and improper. Indeed, the Court's order does not cite, and research has not disclosed, any authority permitting a court to order the parties to a second trial on issues already tried without identifying any error in the conduct of the first trial.

## II. A Retrial Would Be Unduly Burdensome For Both Parties, And Especially For Bitmanagement, A Small Company With Limited Resources

Holding a new trial would also be unfairly prejudicial and unduly burdensome for Bitmanagement, which is a small company of limited means. This Court's Rules provide that "[t]hey should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. U.S. Ct. Fed. Cl. 1. An entirely unnecessary retrial on damages issues already fully tried would not be just, speedy, or inexpensive. It would be very costly for both parties—and would further delay the relief Bitmanagement has been awaiting for years and is entitled to under the Federal Circuit's mandate.

Bitmanagement is a small company with limited resources and few employees. *See* D122.25-26-Tr. Bitmanagement paid for transatlantic travel and lodging for multiple company

16

personnel to attend depositions in 2018, and to attend and testify at the six-day trial in April 2019.  If the retrial goes forward, Bitmanagement would be required to expend significant time and additional funds on travel from Germany to Washington to provide witness testimony that has already been provided once.

And of course, both parties will be forced to expend additional legal and legal-support resources to prepare for the retrial, including drafting extensive additional written briefing, preparing fact witnesses, compensating and preparing an expert witness (in Bitmanagement's case), and preparing trial exhibits.  Much of that will be wholly duplicative of prior work—but it still must be redone, both because materials will need to be tailored to the changed circumstances of the retrial, and because trial arguments, witness memories, and exhibits must be refreshed due to the passage of time since the April 2019 trial.  That burden is in addition to the four rounds of duplicative post-remand briefing concerning the same damages issues that the parties have already undertaken over the past year, covering issues that the parties will presumably have to brief *again* before and after the retrial.

The expenditure of those costs will be entirely unnecessary and wasteful, because, as explained above, *supra* p. 14-16, every shred of testimonial and documentary evidence necessary to the Court's damages determination is already in the record.  Indeed, if any witness testifies at the retrial in a manner that deviates from prior testimony, that testimony will likely be impeached by opposing counsel using prior testimony.  The exercise will thus essentially amount to an expensive and lengthy reenactment of the aspects of the April 2019 trial that relate to damages. A new trial would amount not only to an entirely unnecessary and undue burden on the parties; it would also waste judicial resources.  *See United States v. Barnett*, 34 F. App'x 150 (5th Cir.

2002) (table) (upholding denial of new trial motion because it would amount to a "waste of judicial resources").

Bitmanagement filed this case in July 2016. *See* Compl. (Dkt. 1). By the time of the Court's planned retrial in October 2022, Bitmanagement's claim will have been pending for more than six years. Bitmanagement has already expended extensive resources to vindicate its intellectual property rights—rights the Federal Circuit has now confirmed were infringed. Bitmanagement would be unfairly prejudiced and unduly burdened by having to prepare for a duplicative second trial on damages issues that have already been fully litigated in the record before this Court. Proceeding with a duplicative and wasteful second trial, which neither party has requested, would be an abuse of discretion and a waste of party and judicial resources. Bitmanagement respectfully asks the Court to vacate its order setting a retrial and instead proceed with calculating damages and entering judgment on the existing record.

## III. A Retrial Would Violate The Mandate Rule

Finally, holding a retrial would violate the mandate rule, because the Federal Circuit's remand instructions do not permit a retrial. "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). Thus, "the mandate rule 'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" *S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) (quoting *Bell*, 5 F.3d at 66). "In interpreting [the Federal Circuit's] mandate, 'both the letter and the spirit of the mandate must be considered." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1374 (Fed. Cir. 2021) ("Omega Patents II") (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)); *see also Bell*, 5 F.3d at 66 ("The mandate rule does not simply preclude a district

court from doing what an appellate court has expressly forbidden it from doing.  Under the mandate rule, a district court … may not alter rulings impliedly made by the appellate court.").

In its decision in this case, the Federal Circuit stated that, because it reversed and vacated the Court's holding concerning liability, it would "remand for a calculation of damages," *Bitmanagement II*, 989 F.3d at 941 (emphasis added), or, in a slightly different formulation, "remand for a determination of damages," *id.* at 951 (emphasis added).  The Federal Circuit never indicated that the Court should hold a new trial.  Instead, the terms that it employed suggested that the Court should decide the proper amount of damages based on the existing record.  *See Calculation*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/calculation ("[T]he process of *using information you already have* and adding, taking away, multiplying, or dividing numbers to judge the number or amount of something." (emphasis added)); *Determination*, Black's Law Dictionary (11th ed. 2019) ("The act of finding the precise level, amount, or cause of something.").

In contrast, when the Federal Circuit intends that a new trial occur on remand, it says so expressly.  For instance, in *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337 (Fed. Cir. 2019) ("*Omega Patents I*"), the Federal Circuit stated that it "vacate[d] and remand[ed] *for a new trial* [on] the compensatory damages award, the jury's willfulness finding, and the district court's enhanced damages and attorney's fees award," and noted that, at the trial, "the parties are urged to achieve clarity by clearly presenting evidence, objections, arguments, and jury instructions as to … compensatory damages … so that this court may effectively fulfill its appellate function in any further review arising from the retrial," *id.* at 1354.  *See also, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) ("We reverse the district court's denial of

Microsoft's JMOL regarding the damages award, vacate the award, and remand for a new trial on damages."); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996) ("[T]his court vacates and remands to the trial court with instructions to order judgment in the amount of $220,567. Should Oiness refuse to accept the reduction of its award, the trial court may grant Oiness a new trial on damages.").

Nor is this case similar to those in which the Federal Circuit has previously required a new trial on damages. The Federal Circuit has ordered new trials on damages after determining that the jury in the previous trial did not properly weigh the evidence, *see Lucent Techs., Inc.*, 580 F.3d at 1335 ("Because the damages award with respect to infringement by Outlook is not supported by the evidence but is against the clear weight of the evidence, a new trial on damages is necessary.")—or because improper evidence was considered at the original trial, *see Omega Patents II*, 920 F.3d at 1347. Here, neither of those factors is present. Both parties were given a full and fair opportunity to present their evidence on the issue of damages at the trial in April 2019, *supra* p. 4-6, there is no jury verdict to set aside, and the Federal Circuit did not suggest that any evidence on the issue of damages was improperly admitted or excluded. To nonetheless hold a new trial, at which the Court will receive the same evidence that is already in the record and make findings of fact and enter a judgment that it could have entered immediately upon remand based on the existing record, would violate the Federal Circuit's clear instruction to "calculate[e]" Bitmanagement's damages on remand and make a "determination" about the proper award.[3]

---

[3] Moreover, even if the mandate were ambiguous about whether to hold a new trial (it is not), the Court should interpret it to avoid unnecessary, duplicative, and unduly burdensome further proceedings. *See Crowe v. Stewart Mach. & Eng'g Co.*, 1994 WL 516612, at *1 (E.D. La. Sept. 15, 1994) (holding that, while Fifth Circuit mandate was unclear as to whether order for

IV.     **The Court Should Stay All Pretrial And Trial Deadlines Pending Disposition Of This Motion**

The Court should stay all pending pretrial and trial deadlines pending its resolution of this motion.  The parties are presently suffering and will continue to suffer irreparable harm by devoting counsel and witness time to preparing for a trial that entirely unwarranted.  In particular, the costs of preparing for and undertaking an unnecessary second trial will irreparably harm Bitmanagement, because even though it is entitled to damages for the Government's infringement, those costs are not compensable.  *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019) ("In the unusual circumstances presented here, in which monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury justifying preliminary relief."); *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 319 (2009) ("[I]f a litigant has no action against the United States for lost profits, as is the case here, the harm to the litigant can be considered irreparable.").  Moreover, the loss to Bitmanagement of the substantial time its officers must devote to trial preparation—time that could instead be devoted to developing new software or otherwise growing the business—will not be compensable.  The Court should accordingly immediately stay all pretrial and trial deadlines pending its consideration and decision of this motion.

**CONCLUSION**

The Court should reconsider its order scheduling a new trial, vacate the trial date and all related deadlines, and calculate damages and enter judgment on the existing record.  The Court

---

"new trial confined to the issue of … damages" required a retrial on all damages issues or only the plaintiff's medical expenses, new trial would cover only that latter issue, which was the only aspect of damages the court of appeals found inadequate), *aff'd*, 78 F.3d 582 (5th Cir. 1996).

should also stay all pretrial deadlines pending resolution of this motion.


Dated: March 22, 2022                    Respectfully submitted,

                                         */s/ Brent J. Gurney*
                                         Brent J. Gurney
                                         *Counsel of Record*
                                         Wilmer Cutler Pickering Hale and Dorr LLP
                                         1875 Pennsylvania Ave., N.W.
                                         Washington, D.C. 20006
                                         Telephone:  (202) 663-6000
                                         Facsimile:  (202) 663-6363
                                         Email:  brent.gurney@wilmerhale.com

                                         *Of Counsel*
                                         Leon T. Kenworthy
                                         Jamie Yood
                                         Michael Carpenter
                                         Wilmer Cutler Pickering Hale and Dorr LLP
                                         1875 Pennsylvania Ave., N.W.
                                         Washington, D.C. 20006
                                         Telephone:  (202) 663-6000
                                         Facsimile:  (202) 663-6363
                                         Email:  leon.kenworthy@wilmerhale.com
                                                 jamie.yood@wilmerhale.com
                                                 michael.carpenter@wilmerhale.com

                                         *Counsel for Bitmanagement Software GmbH*